THE STATE ex inf. JAMES M. HAW, Prosecuting Attorney, v. THREE STATES LUMBER COMPANY, Appellant.

In Banc, April 27, 1918.

1. **CORPORATION:** Charter Powers: Holding Title to Lands. A foreign corporation whose charter purposes, as expressed in its articles filed with the Secretary of State, are "to purchase, lease, build, construct, alter, maintain and operate, rent and sell sawmills, grist and feed mills, sash, door, blind and furniture factories, etc.," cannot lawfully retain title to lands after it has ceased to do a lumber, sawmill and furniture business in this State, either in its own name or in the name of another; and if just before the expiration of six years after it has ceased to do business in this

State, it attempts to evade the law by making a colorable deed to another, vesting him with the title, to be held for the use of its stockholders in proportion to their corporate stock, it is liable to punishment in the manner provided by statute.

2. ———: ———: Etc. The "Etc." used in said charter after the other words defining the powers of the corporation, embraced only other purposes of like character to those specifically named.

3. ———: ———: Subsequent Charter. A filing of a charter with the Secretary of State by the foreign corporation, after suit has been brought for a violation of the laws of this State, by which it attempts to establish its right to hold lands in this State for other purposes than those expressed in so much of its charter as it originally filed with the Secretary of State and upon which it secured a license, will not avail as a defense.

4. ———: ———: Holding Land in Mortmain. One of the purposes which the provision of the Constitution declaring that no corporation shall "hold any real estate for any period longer than six years, except such as may be necessary and proper for carrying on its legitimate business," was to prevent land lying in practical *mortmain*.

5. ———: ———: ———: Effect of Judgment: Subsequent Proceeding. An imposition of a fine of five thousand dollars on a corporation for holding lands for purposes other than those expressed in its charter and in violation of the Constitution, will not preclude the State from taking subsequent proceedings, in case of the company's further default to cause a transfer of the title of the lands so as to promote the complete alienability thereof contemplated by the Constitution.

Appeal from Mississippi Circuit Court.—*Hon. Frank Kelly*, Judge.

AFFIRMED.

*J. C. Wilson, Wm. H. Fitzhugh* and *Judson, Green & Henry* for appellant.

(1) As the company was lawfully in the State, doing business therein, it was necessarily acting under its Wisconsin charter, with all the powers contained therein, subject to the laws of this State. Being authorized by its charter to engage in the business of buying and selling land, including timber land, the corporation could not, by owning land, violate the Missouri

statute when this was necessary and proper for the conduct of its business. Thompson on Corporations, secs. 6685, 2382; Land Co. v. Tilton, 19 Fed. 73. (2) The fundamental principle is clearly recognized in the State of Missouri that the measure of the powers of a corporation is to be found in its charter, and the powers therein granted may be exercised in other states than that if its creation, subject to the laws of such states; and this is true of the power to deal in and hold real estate. Missouri Co. v. Rhinhart, 114 Mo. 218; State v. Tobacco Co., 177 Mo. 1; State ex rel. v. Cook, 181 Mo. 596; Smooth v. Bankers Life Assn, 138 Mo. App. 438. (3) The charter of the defendant company, which must be the measure of its powers in this State, subject to the laws of the State, includes the following: "1. To purchase, lease, build, construct, order, maintain and operate, rent and sell sawmills, planing mills, sash, door, blind and furniture factories. . . . 2. To purchase, sell, lease and re-lease and rent land and all manner of real estate . . . including . . . timber lands . . . to develop, operate and improve such lands." (4) The company thus had the express charter power to buy and hold lands in Missouri, and if the measure of defendant's powers is to be found in the certificate issued by the Secretary of the State of Wisconsin, the same result would follow. Thus, this certoficate stated that the defendant was authorized "to purchase, lease, build, construct, order, maintain and operate, rent and sell sawmills, grist and feed mills, planing mill, sash, door, blind and furniture factories, etc., etc." It is common knowledge and, therefore, a fact of which the court will take judicial notice, that the purchase and ownership of timber lands is essential to the economical and successful operation of sawmills; and the operators of such mills are continually purchasing timber lands in advance of their immediate requirements. Such a power is clearly incidental and necessary to the exercise of the principal power. Cook on Corporations (6 Ed.), p. 11; Thompson on Corpora-

tions (2 Ed.), sec. 2381; Callaway Company v. Clark, 32 Mo. 305; Weekler v. First National Bank, 42 Mo. 581; Green Bay Co. v. Union Co., 107 U. S. 413; Railroad v. Howard, 7 Wall. 392; Ford Co. v. Smith Co., 151 U. S. 294. The use of the abbreviation "etc., etc.", at the end of the powers enumerated in the certificate, clearly indicates other powers not inconsistent with the power expressed and of their general nature. Doty v. Telephone Co., 123 Tenn. 329; In re Skyler, 104 Mass. 426; Railroad v. Berry, 96 Ky. 604; Tepp v. Tillinghart, 7 R. I. 434; Lathers v. Kehoe, 39 Hun, 576. (5) As it is clear that defendant company lawfully acquired these lands, the only question that remains is whether their holding was necessary and proper for the purposes of the business of the defendant. This condition does not mean that a corporation, in acquiring timber lands, is limited in its holdings to those necessary for its immediate use. Such a constructon would be disastrous to a lawful and necessary business. Its future use and availability are rightly to be considered. Commonwealth v. Louisville Co., 139 Ky. 689; Thompson on Corporations (2 Ed.), sec. 2386, 2387 and 2431; School Board v. King, 127 Ky. 824; Sauchy v. Gunder, 150 Ill. App. 604; McQuaide v. Enterprise Co., 111 Pac. 927; Ronaldson v. Bynum, 122 La. 687; People v. Car Co., 175 Ill. 125. (6) The words "necessary and proper" do not mean that a corporation may not, in good faith, look to the future as to the requirements of its business, just as an individual could. Necessary and proper to a business means no more than appropriate to that business at present or in the future. McCullough v. Maryland, 17 U. S. 316; Lancaster v. Green, 24 Nebr. 98; Legal Tender Cases, 79 U. S. 457; United States v. Fisher, 6 U. S. 92; Marteris v. Marteris, 20 N. J. Eq. 431; Thayer v. Hedges, 23 Ind. 141; Docks Co. v. Pennsylvania, 53 N. J. Eq. 142; Colton v. Lein Co., 6 Fla. 610. (7) The suggestion, that the "legitimate business" requisite for the holding of lands by a corporation in this State, must be itself located

in Missouri so that defendant could not use Missouri timber in its mill at Burdette, Arkansas, is obviously untenable. The statute was intended to prevent speculative holdings, and not to embarrass legitimate business, whether located on one side or the other of the state line. (8) The conveyance to Gilchrist in 1902 in trust for the then stockholders of the company (naming them and the number of shares held by them), the corporation being solvent, and no rights of creditors being involved, was obviously exactly what the law would have required if the lands were not necessary and proper for the defendant to own in its business. The corporation, as such, has had no legal or equitable title to the lands since that transfer. If the company wished to discontinue business with these lands, it did exactly what the law would require it to do in such cases. Richards v. Coal Co., 221 Mo. 149. And even if the State had forced the company out of business under a *quo warranto* proceeding, such would have been the course. State v. Delmar Club, 200 Mo. 71; State v. Oil Co., 218 Mo. 360.

*Frank W. McAllister,* Attorney-General, and *John T. Gose,* Assistant Attorney-General, for respondent; *James M. Haw,* of counsel.

(1) If appellant did not comply with the laws of this State, it was not authorized to do business in this State, and could not, therefore, hold land in this State except in violation of our Constitution. Constitution 1875, art. 12, sec. 7; sec. 3037 and 3039, R. S. 1909. Foreign corporations which do business in this State do so by grace and not by right, and must in so doing conform to its laws. 19 Cyc. 1220; Ehrhardt v. Robertson, 78 Mo. App. 412; Cravens v. Insurance Co., 148 Mo. 604; Daggs v. Insurance Co., 136 Mo. 391. A foreign corporation, must, among other things and as conditions precedent to authority to engage in business in this State, comply with the following requirements: 1st, file a copy of its charter of articles of as-

sociation duly authenticated, together with, 2d, a sworn statement under its corporate seal particularly setting forth the business which it proposes to carry on in his State; and 3d, a sworn statement, by the principal officer or agent in Missouri, of the proportion of the capital stock of said corporation which is represented by its property located and business transacted in Missouri. Defendant did not comply with earlier the first or second requirement of the statute. It did not file its charter or article of association. It did not file its statement particularly setting forth the business which it proposed to carry on in Missouri. Sec. 3039, R. S. 1909. Defendant having failed to comply with these conditions precedent, had no right to hold this land or transact any kind of business in this State. All of its acts were void and particularly so as against the State. Ehrardt v. Robertson Bros., 78 Mo. App. 407; Zinc & Lead Co. v. Lead Co., 221 Mo. 7; Parke, Davis & Co. v. Mullett, 245 Mo. 168; 19 Cyc. 1220; Downing v. Ringer, 7 Mo. 586. Defendant's subsequent compliance with the statute did not change the status of defendant at the time of the institution of the suit. The status of defendant at the institution of the suit remains unchanged throughout. Zinc & Lead Co. v. Mining Co., 221 Mo. 18 State ex rel. v. Pond, 135 Mo. App. 85; Parke Davis & Co. v. Mullett, 245 Mo. 172. The provisions of the statute not being complied with, and being conditions precedent, the certificate of the Secretary of State was without authority of law, conferred no rights as against the State, and defendant could not set it up a defense in *quo warranto* proceedings. State ex rel. v. Insurance Co., 49 Ohio St. 440, 16 L. R. A. 613; 19 Cyc. 1284. "Etc." in such certificate cannot mean anything in the face of our statute which says: "Particularly setting forth the business of the corporation . . . which it proposes to carry on in this State." Sec. 3039, R. S. 1909. If it be held to mean anything under such a statute, then certainly it cannot be extended further than *ejusdem generis*.

Doty v. Telephone Co., 123 Tenn. 340; Tepp v. Tilling-hart, 7 R. I. 434; Lathers v. Kehoe, 39 Hun, 576. Whatever may be the view of it, the holding of the land was *ab inito* without authority of law as against the State. (2) No corporation shall engage in business other than that expressly authorized in its charter, nor shall it hold any real estate for any period longer than six years, except such as may be necessary and proper for carrying on its legitimate business. Constitution 1875, art. 12, sec. 7. Defendant purchased land in 1894 and used it in its business in this State until 1897. Since 1897 is has not been used by defendant in connection with any business, but in 1902, just before the six years constitutional limitation expired, it conveyed the same by quit-claim deed to Gilchrist. The evidence conclusively shows, and the court below held, that Gilchrist held for defendant and defendant was the owner thereof. Sec. 2867, R. S. 1909. The conveyance to Gilchrist and Gilchrist's declaration of a trust was a device to evade the statutes and therefore futile. 19 Cyc. 1247, 1286; Com. v. Railroad, 114 Pa. St. 340; Rough v. Breitung, 117 Mich. 48; Meyers v. Wetzel, 35 S. W. 896; Coleman v. Turnpike, 49 Cal. 522, 10 Cyc. 11236, 1137; Gust v. Hoppe, 210 Mo. 293; State to use v. O'Neill, 151 Mo. 67; Rock Island Natl. v. Western Lbr. Co., 134 Mo. 463; Martin v. Estes, 132 Mo. 402; Roberts v. Barnes, 127 Mo. 405; Johnson v. Realty Co., 167 Mo. 325; Johnson v. Realty Co., 117 Mo. 581. In fact, the defendant, having failed to comply with the statutory conditions precedent, could not transact any business in this state and its deed to Gilchist was void and conveyed no title as against the State. Laws 1891, p. 75, R. S. 1909, sec. 3039; Parke, Davis & Co. v. Mullett, 245 Mo. 168; Amalgamated Co. v. Zinc Co., 221 Mo. 1; Mill & Lumber Co. v. Sims, 197 Mo. 507; Tri-State Amus. Co. v. Amusement Co., 192 Mo. 404; Machinery Co. v. Ramlose, 210 Mo. 631. A stockholder is so far an integal part of the corporation that, in view of the law, he is privy to the

proceedings touching the body of which he is a member. Johnson v. Realty Co., 177 Mo. 581. Had the stock-holders, or Gilchrist for them, owned the land, there would have been some settlement between them and defendant in the years elapsing since 1902. Johnson v. Realty Co., 177 Mo. 581. (3) The policy of this State is against perpetuities. Such being the case, the laws with reference to this subject should be construed so as to prevent the evil of perpetuities. Commonwealth v. Property Co., 121 S. W. 399; School Board v. King, 127 Ky. 824; School Board v. Railroad, 124 Ky. 506; Carroll v. East St. Louis, 67 Ill. 568; Trust Co. v. Lee, 73 Ill. 142. An implied power of a corporation exists only to enable the corporation to accomplish the purpose of its existence, and cannot be invoked to authorize acts only remotely connected with the specific purpose for which the corporation was created (or licensed). Canal Co. v. Allen, 273 Ill. 318; Church v. Dixon, 178 Ill. 260; Commonwealth v. Box Co., 152 Ky. 291; Bank v. Commonwealth, 143 Ky. 816. (4) Provisions such as article 12, section 7, Constitution of Missouri, and Revised Statutes 1909, section 3037, are aimed at needless inactivity, in corporate ownership of lands, it being intended that the (foreign) corporations must put it to the use for which it was acquired and allowed by the charter, or to dispose of it so that somebody else might put it to some purpose. Commonwealth v. Box Co., 152 Ky. 291; Commonwealth v. Traction Co., 140 Ky. 388; Ins. Co. v. Commonwealth, 147 Ky. 72.

BOND, J.—I. The State of Missouri, upon the information of its attorney in Mississippi County, charges in *quo warranto,* that the defendant, a Wisconsin corporation, filed a certificate of its corporate purposes with the Secretary of State, on January 3, 1894, to-wit:

"To purchase, lease, build, construct, alter, maintain and operate, rent and sell sawmills, grist and feed

mills, planing mills, sash, door, blind and furniture factories, etc.''

That procuring, in accordance therewith, a license to do business, defendant thereafter failed to comply with the laws of this State in the matter of filing its charter, maintaining a public office and making reports of its business; that defendant also violated the Constitution of this State in the tenure of real estate not ''necessary and proper'' for the conduct of ''its legitimate business'' for more than six years and that in attempted evasion of the Constitution it put the title to 20,090 acres of land, which it held in this State, in one Gilchrist, who was thereafter a nominal titleholder for the benefit of the corporation and through whom it bought and sold for itself lands in this State; that said conveyance was made to Gilchrist August 18, 1902, a little less than six years after defendant ceased to do any business in this State other than as incident to the ownership of said land through said trustee. The information prayed a forfeiture of the corporate rights and property and for such other judgments and orders as to the court might seem meet and proper.

The answer admitted defendant to be a corporation organized in Wisconsin, admitted it did not file its articles of incorporation or corporate purposes when it sought admission into this State, except as stated above in the information; denied that it was the owner of any real estate in Mississippi County, Missouri, six years before the filing of the information, and denied that its conveyance thereof to Gilchrist in 1902 was for the fraudulent purpose of evading the Constitution of this State. The answer set up that it did, however, file its articles of incorporation in this State on March 28, 1911, under which it was entitled to acquire and dispose of lands and real estate within the United States, and other things. The answer also set up that the lands originally purchased by defendant were valuable at that time only for timber and that it

erected a sawmill thereon in 1894, and continued to operate it until it was destroyed by fire in 1897, and did not rebuild the same nor further conduct the saw-milling business in this State for commercial reasons, but did build a sawmill at Burdette, Arkansas, about eighty miles distant from the lands it owned in Mississippi County; that since 1897 defendant has transacted no business in the State of Missouri, other than "such as was incident to the ownership of said lands and timber so long as it held the same."

The reply took issue and also averred that defendant was estopped to deny that its lawful power to do business in this State was confined to the things mentioned in the statement which it filed with the Secretary of State when it obtained a license from him in 1894.

Upon the trial the court, among other things, found that the defendant had violated the Constitution and statutes of Missouri by holding the lands described in the information for more than six years, which were not necessary and proper for carrying on its legitimate business, and that its conveyance to Gilchrist in 1902 and the declaration of trust made by him, were for the purpose of evading the Constitution and laws and statutes of Missouri and fraudulent and void. Wherefore the court fined defendant $5000 and costs of suit and ordered execution, to reverse which judgment defendant has appealed.

II. It is wholly unnecessary to discuss what rights and powers defendant might have enjoyed in this State under a land-buying and land-purchasing charter such as it did not file when it obtained a license to do business here, but only filed after the happening of matters charged in the information and the institution of that proceeding on behalf of the State. What is actually produced as its plea for a right to do business in this State was a statement (copied above) that it was incorporated to build and operate sawmills, furniture factories, "etc." In accordance with these specific objects it was licensed to do business in this State. That was

the effect of the license then given to it by the Secretary of State, for he had no legal authority or power to authorize it to exercise any other franchises than those comprised in the statement of its corporate purposes filed with him. The addition of the word "etc" embraced only other purposes of like character to those specifically named. [Doty v. Telephone Co., 123 Tenn. l. c. 340.] In pursuance of the authority thus given, defendant entered upon the sawmill and logging business in this State and prosecuted the same until 1897, when after a fire destroying the plant, it declined to rebuild, but established a sawmill eighty miles distant in the State of Arkansas. It did not thereafter use any of the timber on the land owned in this State, as an adjunct of the sawmill in Arkansas, but shortly before the lapse of six years from the discontinuance of its business here, it conveyed all the lands to one of its stockholders (Gilchrist) to hold for all the stockholders in proportion to their shares in the corporation. The only reasonable view to take of this act is that the defendant thereby intended to do one of two things: first, to make a bona-fide transfer of the title to said lands, in compliance with the Constitution and laws of this State, or, second, to make a colorable transfer of the title to said lands for the purpose of evading the Constitution and laws of this State. Which of these two motives characterized the act in question is readily determinable from a consideration of the circumstances attending its performance. Before examining these specifically, it may be noted that the positions taken in the learned brief for defendant are somewhat inconsistent. According to one theory, defendant, in good faith, conveyed an indefeasible title in fee to Gilchrist in 1902. According to the other contention made in the brief, defendant claims the right to own the land in question under the broad provisions of its charter in Wisconsin, as shown by a belated copy filed March 28, 1911, after the bringing of this suit. It is only necessary to discuss the first of these propositions, the

issues as to which were decided adversely to the defendant by the trial court; for if that judgment is upheld, it can make no difference as to its rectitude that defendant, after the bringing of the suit, sought to show (by subsequently filing its charter) a right to retain title to the lands in question contrary to the terms of its deed to Gilchrist. After a careful consideration of the testimony we cannot escape the conclusion that the learned trial court was correct in its findings as to the object and purpose of the deed from defendant to Gilchrist. We think the deed to Gilchrist was a pure pretense. It was made with seeming calculation just before the lapse of the six years after defendant retired from transaction of any and all business in this State. The title thus vested in Gilchrist purported to be subject to direction as to conveyance by him, which should be given by the stockholders as such, of the defendant corporation. These facts are susceptible of only one construction, which is that defendant recognized that its status in this State, after the cessation of its business in 1897, as to its right to retain the land acquired here, fell within the provisions of the following clause of the Constitution of this State:

"No corporation shall engage in business other than that expressly authorized in its charter or the law under which it may have been or hereafter may be organized, nor shall it hold any real estate for any period longer than six years, except such as may be necessary and proper for carrying on its legitimate business." [Constitution, art. 12, sec. 7.]

That this was a colorable conveyance by the defendant is further demonstrated by the fact that from the time it was made until the present, it has kept on its books a separate account of the alleged Gilchrist trusteeship, which shows that all the taxes and disbursements on account therefor, have come from the coffers of the corporation. This account shows in the aggregate some thirty-one thousand dollars, with no evidence of interest charged, or closure. It also appears that the corporation claimed the right to receive the money for

alleged trespasses on the land, after its deed to Gilchrist, though suits therefor were brought in his name. The resolution under which the conveyance was directed authorized it to be made for the consideration of one dollar. There is no evidence of the record or production of the trust declaration on the part of Gilchrist until after this suit. The evidence does show by the testimony of its assistant secretary and treasurer, that the understanding was that defendant would eventually operate this timber and that Gilchrist knew of that intention on the part of defendant. It was further shown by the witnesses for defendant that none of the timber on the land in question was ever used in connection with the Arkansas sawmill. And it further appears that this land has lain in practical *mortmain* from the time of the deed to Gilchrist, one of the mischiefs which the Constitution is designed to prevent. The lands in question, during the twenty-four years since its original purchase, have been held in practically a solid body and appear to have increased in value from fifty thousand dollars to approximately a million. By the holding device adopted by defendant it has reaped the benefit of the exploitation and enhancement of value that has and must come to the lands in that portion of the State from the State systems of drainage and Government systems of levees which have been and will be established.

A careful consideration of this record has impressed us that the trial court was not only warranted by the undisputed testimony in the record in the imposition of a fine of only five thousand dollars, but acted with leniency in thus limiting the fine for the misconduct of defendant. That judgment is not, however, to be held to preclude the State from proper proceedings hereafter (in case of further default of defendant) to cause a transfer of the title of the land in question so as to promote the complete alienability thereof contemplated by the Constitution.

The judgment of the trial court is affirmed. It is so ordered.

All concur, except *Faris, J.,* not sitting.