R. W. OWEN, J. G. OWEN, FRANK G. OWEN, A. R. OWEN, RUST-OWEN LUMBER COMPANY, PAUL D. RUST, DORA D. RUST, LOUISE RUST RUSSELL, ETHEL H. BEEBE, FLORA SMITH GILCHRIST, as Sole Executrix and Heir of Estate of F. R. GILCHRIST, GRACE GILCHRIST FLETCHER, RALPH E. GILCHRIST and GILCHRIST & COMPANY, LIMITED, v. W. A. GILCHRIST, THREE STATES LUMBER COMPANY, CORA S. SMITH, Residuary Legatee Under Last Will of HERBERT SMITH, CORA S. SMITH, Guardian of CATHERINE M. SMITH and ADELAIDE H. SMITH; W. A. GILCHRIST, Appellant.

Division Two, June 16, 1924.

1. **CORPORATION: Holding Lands Longer Than Six Years: Effect of Previous Conveyance.** Where six years had not expired from the time a corporation ceased to use its lands in its legitimate business until it executed its deed conveying them to a trustee, to be sold by him, and he executed a deed of trust back to the stockholders, a judgment holding that said corporation had violated that part of the Constitution forbidding any corporation to hold real estate for any period longer than six years, except as may be necessary and proper for carrying on its legitimate business, and that said "conveyance and said declaration of trust under it are and were fraudulent and void and are for naught held," necessarily invalidated the deed and the declaration of trust, and was an adjudication that, as against the State, they were void, and that the equitable title of the lands at least was in the corporation, and was binding upon it.

2. ———: ———: **Judgment of Forfeiture: Continuation of Trust: Res Adjudicata: Subject-Matter.** Shortly before the expiration of six years after a corporation had ceased to use its lands for the legitimate purpose of its business, it conveyed them to one of its stockholders, who made a declaration of trust acknowledging that he held them and the proceeds of any sales made by him for the benefit of its stockholders. Later he became president and manager of the company, but was not made a party to a suit of *quo warranto* to forfeit the lands to the State, and did not appear at the trial, but did employ counsel to defend the suit. That suit resulted in a judgment imposing a fine of $5,000 on the corporation and decreeing that, in so far as the State was concerned, the conveyance to him and his declaration of trust were fraudulent and void, but it did not undertake to determine the title to the lands between him and the stockholders. Thereafter this suit was brought by the stockholders against him and the corporation to determine the title of the lands. *Held, first,* that the cause, or subject-matter, of the two suits was not the same, and that the validity of the conveyance and declaration of trust, as between the parties to the suit, was not determined by the judgment in the *quo warranto; second,* that the conveyance to the trustee, and a subsequent conveyance by the corporation to the stockholders, although it conveyed nothing to them, effectively divested the corporation of any semblance of title to the lands; and, *third,* that the stockholders are in no position to question the validity of their quitclaim deed to the trustee or his declaration of trust in their favor, but those instruments put the legal title in the trustee, subject to the trust, and his right to administer the trust cannot be questioned either by them or by the corporation.

3. **TRUST: Termination.** A court of equity cannot ordinarily terminate an active trust capable of being carried out in the manner provided in the instrument creating it, or interfere with the trustee so long as he is acting in good faith and the purpose of the trust has not been accomplished.

4. ———: ———: **Conveyance of Land: Estrangement Between Beneficiaries and Trustee.** Where a corporation, which had ceased to use its lands for the legitimate purposes of its corporation, conveyed them to one of its stockholders to be sold by him, and he entered into a declaration of trust acknowledging that he held them for their benefit and obligating himself to return to them, in proportion to the amount of the stock held by each, the net proceeds of such sale, and agreeing to sell the lands, or any part thereof, whenever he deemed it "best for the parties in interest, or whether thereto requested in writing by a majority in interest of said stockholders," he cannot be removed as such trustee

merely because of an estrangement between him and the bene-
ficiaries, or merely because he has exacted an excessive compensa-
tion for selling the lands, there being no good reason, now that
all legal impediments to sales and the grant of good title have
been removed, why he cannot proceed immediately to sell the
lands, whenever a majority of the stockholders request him to sell.

---

Headnote 1: Corporations, 14A, C. J. sec. 2394 (1926 Anno), Head-
note 2: Estoppel, 21 C. J. sec. 35; Judgments, 34 C. J. sec. 1457 (1926
Anno), Headnote 3: Trusts, 39 Cyc. 100. Headnote 4: Trusts, 39
Cyc. 263, 264.

Appeal from Mississippi Circuit Court.—*Hon. Frank
Kelly*, Judge.

REVERSED AND REMANDED (*with directions*).

*Herbert Pope, Edgar R. Rombauer, James A. Finch*
and *W. H. Fitzhugh* for appellant.

(1)   If the trust of 1902 is valid, as the circuit court
finds, and the trustee has power to carry out the trust
by selling the trust property, as the court also finds, then
the court has no power to terminate the trust before its
purpose is accomplished or to set aside to the defendant,
as a beneficiary under the trust, a separate tract of land
as a substitute for his share of the proceeds to be realized
from a sale of all the land, as provided in the trust in-
strument.   (a)   The finding that the trust is valid and
that the trustee has power to sell the trust properly re-
moved the only difficulty theretofore existing in the car-
rying out of the trust and also removed all ground for
the termination of the trust by the court.   (b)   A court
of equity has no power to terminate an active trust
which can be carried out in accordance with its terms
where all parties in interest have not consented to such
termination.   Shelton v. King, 229 U. S. 90; Gibson v.
Gibson, 280 Mo. 519, 533; Stevens v. De La Vaulx, 166
Mo. 20; Easton v. Demuth, 179 Mo. App. 722; Smith v.
Smith, 70 Mo. App. 448, 451; Ewing v. Shannahan, 113
Mo. 188, 196; Newton v. Rebenack, 90 Mo. App. 650, 657;

Cuthbert v. Chauvet, 136 N. Y. 326. (c) A court of equity will not undertake to grant relief to parties who are able to secure the relief to which they are entitled without the aid of a court, particularly where they have made no attempt to secure relief for themselves and, as in the case at bar, have prevented the trustee from securing it for them. (d) There is no finding of any ground for the removal of the trustee and the appointment of a successor, and there is therefore no ground for accomplishing this result indirectly by terminating the trust and so preventing the trustee from fulfilling his active duties. (e) A court of equity cannot arbitrarily deprive a beneficiary of a trust of property rights to which he is entitled by terminating an active trust and setting off for him, without his consent, a separate tract of land in place of his share of the proceeds derived from a sale of all trust property, and such action is invalid because it deprives the beneficiary of his property rights without due process of law. Myles Salt Co. v. Iberia Drainage District, 239 U. S. 478; Twining v. New Jersey, 211 U. S. 78; C. B. & Q. Railroad Co. v. Chicago, 166 U. S. 226; Hubbard v. Hubbard, 77 Vt. 73. (2) Even if this court, of its own motion, raises the question of the validity of the trust of 1902 and determines that it is invalid, nevertheless the plaintiffs are not entitled to have the deed to the defendant in 1902 set aside. The court will leave the parties where they have placed themselves and the defendant will be able, as in the past, to sell and convey a good title to the property. (a) This court held in the *quo warranto* case that legal title was vested in W. A. Gilchrist, and it could not legally have held otherwise. Hart v. Sansom, 110 U. S. 151; Arndt v. Griggs, 134 U. S. 316; Roller v. Holly, 176 U. S. 398; Grannis v. Ordean, 234 U. S. 385; State v. Holtcamp, 245 Mo. 655. (b) Plaintiffs are not now entitled to ask the court to set aside the conveyance of 1902 from the Three States Lumber Company to W. A. Gilchrist. Harriman v. Northern Securities Co., 197 U. S. 244; St. Louis, Vandalia & Terre Haute Railroad Co. v. Railroad Co., 145

U. S. 393; Dent v. Ferguson, 132 U. S. 50; Traders' National Bank v. Steere, 165 Mass. 389; Duane v. Merchants Legal Stamp Co., 231 Mass. 113; Miller v. Larson, 19 Wis. 463; Sauerherring v. Rueping, 137 Wis. 407; Continental Securities Co. v. Northern Securities Co., 66 N. J. Eq. 274; Levy v. Davis, 115 Va. 814; Edwards v. Boyle, 133 Pac. 233; Ward v. Hartley, 178 Mo. 135; Zeidler v. Schneider, 181 Mo. App. 277; Ullman v. St. Louis Fair Association, 167 Mo. 273; Ober v. Howard, 11 Mo. 425; George v. Williamson, 26 Mo. 190; Sell v. West, 125 Mo. 621; Creamer v. Bivert, 214 Mo. 473; Scudder v. Atwood, 55 Mo. App. 512; Hall v. Edwards, 222 S. W. 167.

*Bundy, Beach & Holland, Fordyce, Holliday & White* and *J. M. Haw* for respondents.

(1) The judgment in the *quo warranto* action adjudging this trust conveyance to be void and the ownership of these lands, notwithstanding such conveyance, to be still in the corporation, became binding not only on the corporation itself, which was the nominal party in that action, but also upon the trustee and his beneficiaries. In consequence thereof it became not only the right but the duty of the corporation to divest itself of the title to these lands, in compliance with the laws and Constitution and the express mandate of this court. The corporation's conveyance, therefore, to its stockholders, on January 20, 1921, was a lawful conveyance and the grantees therein, by virtue thereof, became the owners of the legal title to these lands. The court, therefore, in this action, upon the application of plaintiffs, properly adjudged this trust to be terminated and properly directed a partition of the lands. (a) The trustee was not a stranger to the title involved in the *quo warranto* action, but sustained privity of estate with the defendant corporation, and was therefore in a position, though not nominally a party to that action, to make himself bound by the judgment therein by participating in the defense

thereof as trustee.  Henry v. Woods, 77 Mo. 271, 281; Sherin v. Brackett, 30 N. W. (Minn.) 551; Boughton v. Harder, 61 N. Y. S. 574; Patton v.. Pitts, 80 Ala. 373, 376; Hartford Fire Ins. Co. v. King, 73 S. W. (Tex.) 71. (b)  The trustee, had he so desired, might have intervened in the *quo warranto* action, on behalf of himself and his beneficiaries, and therefore was in a position, though not nominally a party to that action, to make himself bound by the judgment therein, by participating in the defense thereof as trustee.  21 C. J. 856, sec. 17; Commonwealth ex rel. v. Railroad Co., 114 Pa. St. 340. (c)  The undisputed testimony shows that the trustee, though not nominally a party to the *quo warranto* action, did in fact defend that action, not only as an officer of the corporation, but as trustee, and he thereby made himself a party to the action and became concluded by the judgment therein.  Riescheck v. Klingenhoefer, 91 Mo. App. 430; Landis v. Hamilton, 77 Mo. 554; Mooneyham v. Wynatt, 222 S. W. (Mo.) 451; Wood v. Ensel, 63 Mo. 193; State ex rel. v. Barker, 26 Mo. App. 487; Titus v. Development Co., 264 Mo. 229; State ex rel. v. Stone, 269 Mo. 344; State ex rel. v. Homer, 249 Mo. 58; Locke, v. Commonwealth, 113 Ky. 864; Hines v. Hines, 147 S. W. (Mo.) 774; Bruebaker v. Bidstrup, 163 Mo. App. 646; Davidson v. Real Estate & Inv. Co., 249 Mo. 474, 503; First National Bank v. Anna Burns, 199 S. W. (Mo.) 282; Balke v. Swift, 53 Mo. 85; Bank v. Varnum, 176 Mo. App. 78; Todd v. Ferguson, 161 Mo. App. 624; Leahy v. Merc. Trust Co., 247 S. W. (Mo.) 397; McMillan v. Barber Asphalt P. Co., 151 Wis. 50; Connell v. Kaukauna, 164 Wis. 471, 491; Sturdivant Bank v. Huters, 87 Mo. App. 534.  (d)  The trustee had sole and complete management and control of the defense in the *quo warranto* action.  He stood at that time in a three-fold relation toward the property involved in that litigation. First, he was a stockholder, officer and manager of the defendant corporation, which was the grantor of the property and the creator of the trust; second, he was the grantee and trustee of this property; and, third, he

was also one of the beneficiaries of the trust. (e) As an officer and stockholder of the corporation he became concluded by the judgment against the corporation in the *quo warranto* action. Todd v. Ferguson, 161 Mo. App. 624; Davison v. Real Estate & Inv. Co., 249 Mo. 474, 503; 2 Black on Judgments (2 Ed.) sec. 583. (f) His rights in some of his aforesaid three-fold capacities having been involved in the decision in the *quo warranto* action, the judgment therein bound him in all of his said capacities. 23 Cyc. 1245. (g) Having by his own act made himself a party as trustee, in the *quo warranto* action, the judgment in that action not only bound the trustee, but also his beneficiaries. Raphael v. Railroad Co., 201 Fed. 854; Cooley v. Kelley, 96 N. E. (Ind.) 838; Kerrison v. Steward, 93 U. S. 155; Miller v. Butler, 121 Ga. 758; Connell v. Kaukauna, 164 Wis. 471. (h) The fact that he, as trustee, and the corporation were not adversary parties of record in the *quo warranto* action, does not prevent his being bound by the judgment therein. Comstock v. Keating, 115 Mo. App. 372; Fiene v. Kirchoff, 176 Mo. 516; Wiggin v. St. Louis, 135 Mo. 558. (i) Holding the trustee and his beneficiaries concluded by the judgment in the *quo warranto* action would not result in invalidating the deeds which the trustee had theretofore made to various small purchasers. Louisville School Board v. King, 107 S. W. (Ky.) 247, 15 L. R. A. (N. S.) 379. (j) The estoppel of this judgment was in issue, but, if not, it is now too late for the trustee to object on that score, because all the testimony upon which the estoppel is founded was offered and received without objection and was in fact, in a large part at least, offered by the trustee himself. McDonnell v. De Soto Sav. & Bldg. Assoc., 175 Mo. 250, 275; Fairgate Realty Co. v. Drozda, 181 S. W. (Mo.) 398; Flandreau v. Downey, 23 Cal. 354; Gillett v. Young, 45 Colo. 562. (k) The trustee and his beneficiaries as well as the corporation having all become bound by the judgment in the *quo warranto* action, and the court having in that action held this trust conveyance to be fraudulent and void and in violation

of·the Constitution and laws of the State, it became the
duty of all parties concerned therein to retrace their
steps and undo the entire transaction.   14a C. J. 310,
sec. 2158; Thomas v. Railroad Co., 101 U. S. 71; Morse
v. Holland Trust Co., 56 N. E. (Ill.) 369; Penn. Co. v.
Bauerle, 33 N. E. (Ill.) 166.; Bowman Dairy Co. v. Moon-
ey, 41 Mo. App. 665; Duane v. Merchants Legal Stamp
Co., 231 Mass. 113.   (1)   The corporation, in compliance
with its plain duty in this respect and with the mandate
of this court, undid the transaction, which had so been
held fraudulent and void, by conveying these lands out-
right to its stockholders including the trustee, on Jan-
uary 20, 1921, and the plaintiffs, as grantees under that
conveyance, were entitled to have their title cleared by
obtaining a judicial declaration of the termination of this
trust and to have the lands partitioned in accordance
with their prayer, and the decree therefore in this case
was a proper one and the trustee is not aggrieved there-
by.   (2)   If the trust is to be held valid notwithstanding
the judgment in the *quo warranto* action, the court had
the power to terminate it and did properly terminate it
and order a partition of the lands.   (a)   Because the
beneficiaries desire a termination of the trust and the
trustee himself consented thereto by voluntarily offer-
ing, after the decision in the *quo warranto* action, to con-
vey the trust property to new trustees, and encouraging
his beneficiaries to rely on his offer and incur expense
on the strength thereof.   (b)   Because, due to the de-
cision in the *quo warranto* action, the trustee could no
longer carry out the trust purposes.   Donaldson v. Allen,
182 Mo. 626; Karolussen v. Christianson, 174 N. W. (Ia.)
482; Fox v. Fox, 95 N. E. (Ill.) 498; Robins v. Smith, 72
Ohio St. 1; Cuthbert v. Chauvet, 136 N. Y. 326, 18 L. R. A.
745; Olson v. Youngerman, 136 Iowa, 404; Gilman v.
Burnett, 102 Atl. (Me.) 108; Hawthorn v. Root, 69 Ky.
Rep. (6 Bush) 501; 2 Perry on Trusts (2 Ed.) sec. 920.
(c)   Because of the long and unjustifiable delay of the
trustee in disposing of the trust property.   Donaldson
v. Allen, 182 Mo. 626; Schriver v. Frommel, 179 Ky. 228;

Taylor's Trustee v. Abert, 15 Ky. L. Rep. 515; Laurel
Creek Coal & Coke Co. v. Browning, 99 Va. 528; Bank
Co. v. Mattock, 172 S. W. (Tex.) 162. (d) Because the
repeated failures of the trustee to make advantageous
sale of the trust property when opportunity offered, and
his refusal to sell or convey the property unless the ben-
eficiaries acceded to his exorbitant demand for com-
pensation, was tantamount to a renunciation of the trust
on his part, made the further carrying out of the trust
impossible and justified a judicial termination thereof.
Knitner v. Jones, 122 Ind. 148; Cooper v. Day, 1 Richard-
son's Eq. (S. C.) 26; Gaston v. Hayden, 98 Mo. App.
683; Lathrop v. Baubie, 106 Mo. 470; Cemetery Assn.
v. McCune, 119 Mo. App. 349; 3 Pomeroy Eq. Jur. (4
Ed.) sec. 1077; Laun v. Kipp, 155 Wis. 347; Tracy v.
Gravois Ry. Co., 84 Mo. 210, 13 Mo. App. 295; Kilpatrick
v. Robert, 278 Mo. 257; Marshall v. St. Louis Co., 236
S. W. (Mo.) 692. (e) Because of the distrust and hos-
tility existing between the trustee and all of the bene-
ficiaries. Gaston v. Hayden, 98 Mo. App. 683, 692; Gart-
side v. Gartside, 113 Mo. 348, 356. (f) Because, due to
the manifold delinquencies of the trustee in the perform-
ance of his duties and the adverse decision in the *quo
warranto* action, the trust property has been in constant
jeopardy from further adverse proceedings, and possi-
ble forfeiture on the part of the State of Missouri, and
must necessarily continue so, so long as the trust is al-
lowed to continue—there being no assurance when the
trustee would either be able or willing to sell.

DAVID E. BLAIR, P. J.—This is a suit to determine
the right, title and interest of the parties in approxi-
mately 22,000 acres of timber lands in Mississippi and
New Madrid counties. From a decree for plaintiffs, ter-
minating the trust, partitioning the lands in kind and
fixing certain allowances, defendant Gilchrist has ap-
pealed.

The Three States Lumber Company, herein referred
to as "company," is a corporation organized under the

laws of the State of Wisconsin and authorized to do business in this State. The stock was held by members of the Rust, Owen and Gilchrist families, who are also extensively engaged in other business enterprises. In 1894, or earlier, the company purchased the lands and erected a saw mill thereon. The mill burned, and the corporation did not thereafter use the lands for any corporate purposes, and was merely holding title thereto for almost six years prior to August 18, 1902. On that date and for the purpose of avoiding our constitutional prohibition against a corporation holding land in this State not used in its business for more than six years, the company conveyed the lands by quitclaim deed to W. A. Gilchrist. On the same day Gilchrist executed and delivered a declaration of trust, which was not recorded at the time and not until during the course of the trial of the case at bar. Said declaration of trust, omitting signature and acknowledgment, was as follows:

"Whereas, the Three States Lumber Company has this day conveyed to me, the undersigned W. A. Gilchrist, of Alpena, Mich., certain lands situated in the counties of Mississippi and New Madrid, in the State of Missouri, the same being fully set forth and described in the deed of conveyance, bearing even date herewith, and,

"Whereas, said conveyance was and is intended for the use and benefit of the stockholders of said Three States Lumber Company, and was made to me to facilitate the sale and conveyance of said land when opportunities offer.

"Now, therefore, this instrument of writing, witnesseth: that I, the said W. A. Gilchrist, do hereby declare and state that I am to hold and that I do hold the said lands, and the title thereto, in trust, for the sole use and benefit of the said stockholders of the said company, whose names and shares of stock in said company are as follows: F. W. Gilchrist, 1601 shares; W. A. Rust, 1600 shares; A. J. Rust, 1598 shares; J. S. Owen, 1600 shares; Estate R. E. Rust, 1499 shares; F. H. Drummond, 1333 shares; W. E. Smith, 100 shares; F. R. Gilchrist, 668 shares, and W. A. Gilchrist, 1 share; said shares aggre-

gating to ten thousand (10,000) shares, and making the whole number of shares of stock in said company; and that the respective interests and shares of said stockholders in said lands and all parts thereof, so held in trust by me, are correctly represented by their respective shares of stock in said company or corporation. And I further declare and state that I am to hold, take care of and manage said lands and pay all taxes and other charges thereon and to sell and convey the same, or any part thereof, whenever I may deem it best for the parties in interest, or whenever thereto requested in writing by a majority in interest of said stockholders. And that I will faithfully account for all rents and profits and all other income of and from said lands and of the sales thereof, after first deducting all moneys paid out and expended by me, for and on account of said lands, and interest on the same, and a reasonable compensation to me for my services as trustee for said stockholders.''

The title to a portion of the lands was defective and the trustee caused curative proceedings to be instituted in some cases and in others secured quitclaim deeds from adverse claimants. Some of the lands were conveyed by the trustee. At the date of the execution of the quitclaim deed of August 18, 1902, Gilchrist was a stockholder of the company. He later became vice-president and active manager, and later its president, and remained president until a short time before this suit was filed.

In August, 1910, *quo warranto* proceedings were instituted by the Prosecuting Attorney of Mississippi County in the circuit court of that county against the company to oust it from Missouri and forfeit its property to the State. The amended information alleged violations of our corporation laws, including the charge that said corporation from June 3, 1894, until the filing of the *quo warranto* proceedings and in violation of Section 7, Article XII, of our Constitution, and Section 1024, Revised Statutes 1899 (Sec. 3037, R. S. 1909; Sec. 9790, R. S. 1919), ''continuously, notoriously, wilfully and fraudulently held large bodies of real estate, same being for a period

longer than six years, to-wit, for more than sixteen years, and said real estate not being then and there such as was necessary and proper for the carrying on the legitimate business of said corporation; that from the said 3rd day of January, 1894, until the 18th day of August,.1902, the said Three States Lumber Company so held said real estate in its own name; that on the 18th day of August, 1902, said corporation, through its officers, agents and employees, wrongfully, willfully, unlawfully and fraudulently, and for the sole purpose of evading the Constitution and laws of this State, did, by the quitclaim deed of said company, for an alleged consideration of one dollar, pretend to convey all right, title and interest of said company of, in and to all the real estate owned by said company in said County of Mississippi, amounting to twenty-two thousand and ninety acres, to one W. A. Gilchrist, who then was and now is one of the chief officers and stockholders of said company; that ever since said 18th day of August, 1902, said respondent has so held said real estate and has accumulated and held other real estate in the name of said W. A. Gilchrist, the nominal pretended ownership of said real estate being kept in the name of said W. A. Gilchrist for the sole and only purpose of evading the Constitution and laws of the State of Missouri, as aforesaid. Whereas, in truth and in fact, the said W. A. Gilchrist does not now and never did own said real estate, or any part thereof, but said Three States Lumber Company now does own and has at all the times herein mentioned owned, controlled and managed said real estate, though said company has, since the 18th day of August, 1902, owned, controlled and managed the same in and through the name of W. A. Gilchrist for the sole purpose of evading the Constitution and laws of this State, as aforesaid; that said real estate so held in violation of the Constitution and laws of the State of Missouri, by said company, in said County of Mississippi, as aforesaid, is described as follows:''

The company appeared and filed answer. The trustee was not made a party and did not enter his appearance therein, but did employ counsel and conducted the

defense on the part of the company. He became president in 1916, during the pendency of said suit. The cost of defending the proceedings was paid by the company and by it charged to the trustee.

On April 13, 1914, the Circuit Court of Mississippi County entered its judgment and in said judgment found that:

\    "'The defendant has violated the Constitution and statutes of Missouri by holding land described in the information for more than six years, which lands were not necessary and proper for carrying on the legitimate business of the defendant, and that the conveyance by defend- ant to W. A. Gilchrist of date August 18, 1902, of said lands, and the declaration of the trust made by· said W. A. Gilchrist found in the evidence, on the 18th day of August, 1902, declared that he, W. A. Gilchrist, held the said lands as trustee for the stockholders therein named of the Three States Lumber Company, in the proportion and manner named in said declaration of trust, were all made for the purpose of evading the Constitution, laws and statutes of the State of Missouri, and that said conveyance and said declaration of trust under it are and were fraudulent and void, and are for naught held; and defendant transacted no further or other business in the State of Missouri.

"Wherefore, it is adjudged by the court that the said Three States Lumber Company, defendant, for such its offenses of holding said lands not necessary and proper for its legitimate business for more than six years, be fined and penalized in the sum of five thousand dollars, and that said fine and penalty are hereby assessed and adjudged against the said Three States Lumber Company, together with the costs in this cause, for which execution may issue."

An appeal was taken to this court and the judgment of the trial court affirmed in an opinion filed April 27, 1918. [State ex inf. Haw v. Three States Lumber Co., 274 Mo. 361.] There, BOND, J., speaking for the court en banc, said:

"After a careful consideration of the testimony we cannot escape the conclusion that the learned trial court was correct in its findings as to the object and purpose of the deed from defendant to Gilchrist. We think the deed to Gilchrist was a pure pretense. It was made with seeming calculation just before the lapse of the six years after defendant retired from transaction of any and all business in this State. The title thus vested in Gilchrist purported to be subject to direction as to conveyance by him, which should be given by the stockholders as such, of the defendant corporation. These facts are susceptible of only one construction, which is that defendant recognized that its *status* in this State, after the cessation of its business in 1897, as to its right to retain the land acquired here, fell within the provisions of the following clause of the Constitution of this State:

" 'No corporation shall engage in business other than that expressly authorized in its charter or the law under which it may have been or hereafter may be organized, nor shall it hold any real estate for any period longer than six years, except such as may be necessary and proper for carrying on its legitimate business.' [Constitution, art. 12, sec. 7.]

"That this was a colorable conveyance by the defendant is further demonstrated by the fact that from the time it was made until the present, it has kept on its books a separate account of the alleged Gilchrist trusteeship, which shows that all the taxes and disbursements on account therefor, have come from the coffers of the corporation."

After the judgment of the circuit court was affirmed it became apparent to the trustee, the officers of the company and the stockholders, as beneficiaries in the declaration of trust, that something must be done at once to secure complete alienation of the title from the corporation. Various plans were discussed, including a deed from the trustee to other trustees. Negotiations to

this end were unsuccessful. The main cause of such failure was the amount of compensation claimed by the trustee to be due him for his services. The entire controversy between the parties really centers around this question. The declaration of trust provided for the sale of lands by the trustee as he saw fit, or upon written request by a majority of the stockholders, and concluded with the provision "for a reasonable compensation" to the trustee for his services as trustee, to be deducted from the profits and income and sale of the lands. The trustee claimed $300,000. Part of the beneficiaries were unwilling to make any allowance on the ground that Gilchrist was sufficiently paid for his services as an officer of the corporation. His salary as president during later years was $10,000 a year. None of the stockholders was willing to agree to anything like the allowance demanded by the trustee. The upshot of the matter was that on November 29, 1920, a majority of the stockholders or beneficiaries made written demand and request upon Gilchrist for conveyance by him of the trust property to certain designated trustees. This Gilchrist failed and refused to do. Thereafter the company on January 20, 1921, executed its warranty deed, conveying said lands to its stockholders, including Gilchrist, in undivided interests in proportion to their holdings of stock in the corporation, subject to the rights of Gilchrist, if any, under the quitclaim deed of August 18, 1902.

Thereafter, and on January 22, 1921, the present suit was filed. The plaintiffs are the successors in interest of the stockholders of the corporation named as beneficiaries in the declaration of trust, excepting W. A. Gilchrist and Cora S. Smith, representing a part of the interest of W. E. Smith, deceased. They and the Three States Lumber Company were made defendants.

The petition is exceedingly voluminous. We will only sketch it. The lands are appropriately described. It alleges the facts we have already detailed in regard to the previous ownership of the lands, the necessity on the

part of the company of disposing of the title, execution and delivery of the quitclaim deed to Gilchrist and of the declaration of trust by him to the stockholders. It alleged that the purpose of these instruments was to effect a sale of the lands and distribution of the proceeds thereof among the stockholders of the company to comply with the Missouri Constitution. The respective interests of the parties and how derived are then detailed. It is alleged that the books of account of the trust were kept by the officers of the company, and that all funds for organizing the trust were furnished by the company and charged to the trust; that payment of taxes and management of the lands were handled by the officers and agents of the company. It then recited the *quo warranto* proceedings referred to and the steps taken to convey the lands to other trustees; demand upon Gilchrist to convey the lands and his refusal to do so unless he was paid a compensation of $300,000 and that he claimed a lien on the lands for the payment thereof; that such demand was unreasonable, and that his refusal to convey the lands was a fraud upon the plaintiffs; that Gilchrist was not entitled to the compensation or not more than nominal compensation. It then alleges the authoritative execution of the deed of January 20, 1921, by the corporation; that the declaration of trust had not (then) been recorded and that the company could not convey a good title of record to the lands, notwithstanding the judgment of the *quo warranto* suit; that Gilchrist could not sell or convey said lands and carry out the purposes of the trust because of the said judgment; that it was necessary to get the title out of the company to comply with the judgment of the *quo warranto* suit; that this could not be done unless Gilchrist joined with the company and plaintiffs in further conveyance of the lands.

It then alleged that the quitclaim deed to Gilchrist constituted a cloud upon the title of plaintiffs and that said deed and declaration of trust should be set aside;

that the land could not be partitioned in kind; that the rights of plaintiffs were being jeopardized and could be protected only by a decree of the court terminating the trust and setting aside the quitclaim deed, or by requiring Gilchrist to convey the lands to the company and the company thereupon divesting itself of title; that the plaintiffs had no adequate remedy at law.

It was further alleged that the trustee had borrowed certain moneys from the company, and that the company claimed a lien on the lands for re-payment thereof. Plaintiff then consented that any amount found by the court to be due to Gilchrist as compensation for his services as trustee and any amount found due to the company for moneys advanced by it to the trustee be made a lien on the lands superior to the rights of plaintiffs therein.

The prayer of the petition was for determination of the title of the lands as among the parties; that the validity and extent of the lien claim and demand of Gilchrist against the lands be determined; that the validity of the trust created as aforesaid be determined; that the trust be terminated; that the beneficiaries be declared the legal owners of the lands; that Gilchrist be required to reconvey to the company all his right, title and interest, subject to any lien the court might determine him entitled to, and that the company thereupon be required to convey by supplemental indenture all its title to the lands to the stockholders by way of dividend, subject to liens as aforesaid; that the court order the lands sold at public auction and the proceeds to be divided.

To this petition the defendant company filed its answer, in effect admitting all the facts alleged therein, and alleging that the company advanced all the expenses of administering the trust for the reason that the stockholders of the company and the beneficiaries of the trust were identical and their interests in the trust proportional to their stock holdings. Said answer asked a termination of the trust and for preservation in its favor of a lien upon the lands for moneys advanced to the trust.

Appellant Gilchrist filed an answer and cross-bill. The answer admitted the execution of the quitclaim deed from the company to Gilchrist; it alleged that, while the stated consideration was one dollar, the real consideration was the trust created and assumed by Gilchrist; that he took possession of the lands and faithfully discharged the trust, perfected the title to the lands and by his efforts many times increased their original value. Said answer admitted that the real purpose of the conveyance to Gilchrist was to effect distribution among the stockholders as beneficiaries of the trust by sale of lands and distribution of the proceeds. He admitted that the devolution of the stock in the company was correctly stated in the petition and that the plaintiffs and defendants were the owners of all the outstanding stock of the company. He alleged that the parties were "not the sole parties having an equitable interest in said lands:" that if the parties became the sole legal owners by reason of the decree terminating the trust, they became such legal owners by reason of the conveyance of August 18, 1902, and the declaration of trust of that date, and not by virtue of the deed of January 20, 1921.

Said answer further admitted that Gilchrist had been president and actively managing the affairs of the company during a portion of the time since the lands were conveyed to him, but denied that he had not been called upon to perform services for the trusteeship other than to hold title to the lands and to supervise the payment of taxes and looking after the lands. Appellant then alleged:

"That during the entire time of said trusteeship he gave his personal supervision to the management and control of the trust estate and rendered to the same great service, enhancing its value so that its present value is manyfold its value at the time it was conveyed to him in trust, and this defendant states that such services required the expenditure by him of a great deal of time and the exercise of great skill and judgment; the

details of all of which are hereinafter more fully set forth, and says that the enhancement in value of said trust estate was the direct result of the time, labor and skill and judgment exercised by him in the management and development of said trust property.''

Said answer then admitted the facts heretofore detailed relative to the *quo-warranto* proceedings, but alleged that the trustee was not a party thereto, and took no part in the conduct of the litigation *individually or as trustee,* and that the judgment rendered therein was and is not binding on him as trustee. He alleged that he had conveyed some of the lands to purchasers in good faith, and that if the quitclaim deed of August 18, 1902, be declared void, it will cast a cloud upon the titles of such purchasers.

The answer then alleged that Gilchrist favored complete alienation of the lands, and would have sold them for many times the original cost but for the fact that the plaintiffs prevented him from carrying out such sale. He admitted that negotiations had recently been carried on with plaintiffs looking to the conveyance of the lands to new trustees and alleged that such conveyance was not made because appellants' proposal was conditioned upon securing to him reasonable compensation for his services as trustee. He denied that his refusal to convey was in contravention of the mandate of the Supreme Court in the *quo warranto* proceeding. He alleged that he refused to convey the lands except upon the payment to him of just and reasonable compensation, as provided by the declaration of trust. He admitted the authorized execution and delivery of the deed by the company of January 20, 1921, but denied that said deed conveyed any estate to the stockholders of the company, because the company then had no right, title or interest in the lands, because Gilchrist was then the sole and absolute owner of the legal title, subject to the trust aforesaid; that the sole effect of the deed of January 20, 1921, was to cast a cloud upon the title of the trustee and to

render the sale of the lands by him impossible. Gilchrist admitted that the declaration of trust had not (then) been recorded; that the record title appeared in him, and the company could not convey a good title of record to said lands; that it was necessary for the lands to be sold and the proceeds distributed among the beneficiaries of the trust; that the decision of the courts in the *quo warranto* proceeding made it impossible for him to sell the lands unless the court decreed the fee-simple title thereto to be vested in him as trustee, or unless the beneficiaries and the company joined with the trustee in making conveyance thereof.

The answer then alleged that it would be inequitable and unjust to require the trustee to reconvey the lands to the company, because such decree would prevent the trustee from carrying out the terms of the declaration of trust and deprive the trustee of compensation to which he was entitled; that large Federal income taxes would be imposed upon the trustee and the other stockholders, not imposable if he was permitted to sell the lands under the trust and the trustee would thereby be deprived of his property without due process of law in violation of the Fourteenth Amendment to the Federal Constitution.

Said answer alleged that the trustee was in position to convey good title to the lands, but no one. would purchase unless the company and all the beneficiaries joined in such conveyance. The trustee denied that the quitclaim deed of August 18, 1902, constitutes a cloud upon plaintiffs' title, but alleged that such deed and the declaration of trust constituted the only valid title plaintiffs had in said lands; that if plaintiffs' said deed "was made for a fraudulent purpose, as alleged in said petition, which this defendant denies, then it was so made with the knowledge and consent and at the direction, not only of the plaintiffs herein, but of all the then stockholders of said defendant Lumber Company, and that in such event this court, as a court of equity, cannot now relieve said plaintiffs of the consequence of their own wrongdoing.''

Said answer then alleged that the trustee was not an officer or director of the company when the lands were conveyed to him; that he became the vice-president and manager in 1905, and that it was never suggested that he was to assume such trusteeship without compensation or for a nominal compensation, and that when he became active manager in 1905 there was no intimation that his salary as an officer of the company was to include his compensation as trustee.

Said answer then alleged in detail all the services performed by appellant as trustee. We will not attempt to recite the nature and extent of such alleged services covering eleven printed pages of the abstract of the record. Briefly, it recited the efforts made by the trustee to procure purchasers for the lands and his failure to procure the consent of the other beneficiaries, either because of dissatisfaction as to price or because they would not agree to the trustee's compensation. The answer goes into great details in connection with the services of the trustee in clearing up titles, working for drainage matters deemed in the interest of the lands, and opposing drainage plans he deemed of no advantage to the lands or injurious to them. It also alleges various propositions made by expected purchasers, which failed to result in a sale of the lands for one reason or another. The answer then alleged that the trustee finally concluded that while he had good right to convey title to the land he would be unable to secure purchasers willing to take title from him alone, and thereafter actively took up with the beneficiaries the plan of closing his trusteeship and conveying the lands to other trustees; that such negotiations failed, because the beneficiaries refused to pay him reasonable compensation; denied that his claim for compensation was excessive, extortionate, unreasonable or unjust. The answer then alleged that the court had no power, authority or jurisdiction in this action to remove or displace defendant as trustee; that an attempt to do so, or any statute or judgment authorizing

the same, would impair the obligation of a contract, in violation of Section 10, Article I of the United States Constitution, and would violate Section 2, Article IV, of said Constitution relating to the privileges and immunities of citizens, and Section 2, Article IV, of the Fourteenth Amendment to the Federal Constitution in reference to due process of law.

For his cross-bill the trustee recapitulated his previous allegations touching his services as trustee, and concluded with a prayer for the cancellation of the deed of January 20, 1921; for an adjudication that the trustee had full power to sell lands under the deed of August 18, 1902; for a provision for sale of lands and confirmation thereof; for determination of the trustee's compensation and entry of judgment therefor in his favor, and for direction to him to retain the same out of the proceeds of such sale and for costs.

Defendant Cora S. Smith, as residuary legatee of Herbert Smith, deceased, and as executrix and curatrix, filed answer showing how, in her several capacities, she succeeded to four-fifteenths of the rights of W. E. Smith, deceased, and joined in the prayer for partition of the lands.

The reply of plaintiffs denied that Gilchrist faithfully performed his duties as trustee, and alleged that he jeopardized the title and interests of plaintiffs by his failure and refusal to record the declaration of trust, and that said Gilchrist demanded an exorbitant and outrageous fee as a consideration for carrying out the provisions of the trust; that he failed and refused to aid in any manner to rectify the situation brought about by the decree of the court in the *quo warranto* proceeding. Said reply denied that the value of the lands was enhanced by expenditure of time or by exercise of skill, labor or judgment in the management thereof by the trustee. It alleged that all work of clearing titles and all work in connection with the lands were performed by paid attorneys, agents and employees, for which the beneficiaries

were obligated in the sum of $193,026.04 for money loaned by the company to pay therefor.

Such were the issues made by the pleadings. We regret the necessity of going into them so fully, but have been as brief as possible in view of the fact that it required nearly ninety pages of the printed abstract for the pleadings and exhibits annexed thereto. The oral testimony, almost entirely in condensed, narrative form, together with only a small portion of the exhibits, fills nearly 550 printed pages of the abstract. Accompanying the abstract is a volume covering the proceedings of the *quo warranto* case and two volumes of defendants' exhibits, aggregating approximately 2000 more printed pages. These exhibits cover the trustee's activities affecting the lands during the years following August 18, 1902. Respondents also have filed a small additional abstract of the record.

On August 11, 1922, the trial court entered its decree. As it constitutes twenty printed pages of the abstract, we can only present a synopsis. The court found that the quitclaim deed to Gilchrist and deed of trust by him of August 18, 1902, were for the purpose of getting the title out of the company and selling the lands and distributing the proceeds among the stockholders of the company; that Gilchrist had full power to sell the lands whenever he deemed best or whenever so requested by a majority in interest of said stockholders. The decree then recited the facts relating to the *quo warranto* proceeding, subsequent negotiations between the beneficiaries and the trustee to vest title in some person who could lawfully hold it; that the trustee refused to convey the lands until his compensation in the sum of $300,000 was secured. It recites the execution by the company of the deed of January 20, 1921, in attempted compliance with the judgment of the *quo warranto* proceedings, and held that the beneficiaries took nothing by said deed; that Gilchrist was a salaried officer of the company and president and active manager from 1909 until

1920, and that the company furnished $193,026.04 for the administration of the trust, and decreed a lien in favor of the company therefor.

The decree then set out the court's finding as to the interest of the parties. The correctness of said finding is not challenged. It found that Gilchrist is the trustee and holder of the legal title of said lands for the use and benefit of the beneficiaries and owner of the fee as to his own undivided interest therein; that the company has no further right, title or interest in the lands, except its lien for moneys advanced to the trustee. It found that the trustee had not sold the lands as contemplated by the trust arrangement, and that the title was in jeopardy from another *quo warranto* suit; that the former *quo warranto* proceedings did not adjudicate the title as between the parties to this suit, and is not binding upon the parties thereto "and that such suit only decided that the Three States Lumber Company had violated the statutes relative to a foreign corporation holding real estate not necessary for business purposes." The court then found Gilchrist was entitled to $100 per month for 228 months "for holding the title, paying taxes, looking after the lands, etc.," or $22,800. For his services in perfecting titles and in drainage matters he was allowed the further sum of $10,000. The total compensation was fixed at $32,800, to be prorated against the respective interests of the parties, and the decree made the allowance a lien against the lands.

The court further found that the *quo warranto* proceeding prevented the trustee from making a merchantable title as such trustee, and that his demand for $300,-000 compensation and refusal of the beneficiaries to agree thereto, resulting in failure to complete sales partly negotiated, caused an estrangement between the beneficiaries and the trustee. The trust was therefore terminated, and the trustee ordered to file his settlement in the court and his accounts showing expenses and claims on his part against the estate other than the allowance aforesaid.

304 Mo. Sup.—23.

The court reserved its adjudication concerning costs and the question of partitioning the lands in kind between the parties, but found that it was feasible to set out the interest of Gilchrist by itself and the interests of the other parties together. Commissioners were appointed to set off the interests accordingly, and to report at the succeeding term of court. From said inter·locutory judgment, the defendant Gilchrist appealed.

There are a number of assignments of error made by appellant. In substance, he claims that the court erred in terminating the trust without consent of all the beneficiaries; that it erred in fixing the amount of the compensation of appellant, and in not providing a method of payment thereof; that it erred in making the allowance of $193,026.04 to the company a lien upon the lands decreed to be set apart to the appellant, and in not protecting the trustee against claims of third persons arising out of the administration of the estate, and finally that the decree violated certain rights of the appellant under the Federal Constitution.

I. The first question to be determined is the effect of the judgment of the *quo warranto* proceeding upon the title. The only misuser or abuse of the franchise of the company found in that case to have occurred was that said company held the lands for more than six years when said lands were not necessary to its business. Section 7, Article XII, of our Constitution provides: "No corporation shall . . . hold any real estate for any period longer than six years, except such as may be necessary and proper for carrying on its legitimate business." The statute, now Section 9890, Revised Statutes 1919, makes a similar provision.

There is no question in this case, and there was none in the *quo warranto* proceeding, that six years had not elapsed from the time the corporation ceased to use the lands in its business until it executed the quitclaim deed

*Effect of Conveyances*

conveying said lands to Gilchrist. Therefore, to justify the judgment entered therein, it was necessary for the court to find that the corporation was holding the lands after the execution and delivery of the quitclaim deed to Gilchrist and his declaration of trust; or, in other words, to find, as it did, that the quitclaim deed and declaration of trust were executed for the purpose of evading the Constitution and laws of Missouri and that "the said conveyance and said declaration of trust under it are and were fraudulent and void and are for naught held." Without considering whether the judgment in that case was binding upon the parties in the case at bar, except the Three States Lumber Company, the necessary effect of the judgment in the *quo warranto* suit was to invalidate the quitclaim deed of August 18, 1902, and the declaration of trust and to adjudge at least the equitable title to the lands to be in the corporation, all being in so far as the State was concerned. In no other way can the theory of misuser of franchise and imposition of a fine therefor be justified.

II. Can appellant now contend that, notwithstanding said judgment, he is the owner of the legal title to such lands, subject only to the declaration of trust, and now be permitted to assert his right to administer the trust, notwithstanding the circuit court and this court upon appeal adjudged both the conveyance to him and his declaration of trust thereunder to be fraudulent and void and held them for naught, as against the State? The answer must be found in the determination of the effect of the judgment upon the rights of Gilchrist, when he was not made a party to that suit individually or as trustee.

Continuation of Trust.

The facts relied upon to bind Gilchrist by the judgment are that at the time the *quo warranto* suit was begun he was a stockholder and managing officer of the corporation and became president while the suit was pending. He not only had knowledge of the suit, but

managed and directed the defense thereof through counsel employed by him. He contended that he did all this as an officer of the company, and not as trustee or beneficiary. He did not appear at such trial to testify or permit a summons to be served upon him. He said it was his intention to protect the interests of the beneficiaries, as well as the interests of the company. He claimed that it was to prevent service upon him and presumably thus protect the interests of the beneficiaries that he stayed away from the trial. The entire cost of the defense was charged to the trust account. The $5000 fine was thus charged, but was subsequently charged back, as part of about $8000 of the expense of the suit, to enable the company to make deductions on its income tax. The stockholders and the beneficiaries were identical when the declaration of trust was executed, and they held the same relative interest in the lands which they then held in the stock of the company. Gilchrist himself was a stockholder and a beneficiary in the declaration of trust.

The general rule seems to be that a person not made a party of record to the suit is nevertheless bound by any judgment rendered therein, if he has a direct interest in the subject-matter of the suit and has the right and opportunity to make defense or control the proceeding. [Reischick v. Klingelhoefer, 91 Mo. App. l. c 434; Wood v. Ensel, 63 Mo. l. c. 194; Titus v. North K. C. Dev. Co., 264 Mo. l. c. 246; State ex rel. Reeves v Barker, 26 Mo. App. 487; State ex rel. Kern v. Stone, 269 Mo. l. c. 343, and authorities cited in above cases.] Gilchrist had the right and the opportunity to make the defense in the case. So it becomes important to determine if he as trustee was interested in the subject-matter of that case. 3 Bouvier's Law Dictionary (Rawle's 3rd Revision) 3162, defines subject-matter as "the cause; the object; the thing in dispute." In discussing the conclusiveness of the former judgment in a subsequent suit between the same parties, as turning upon the identity of the subject-matter involved, it is said in 23 Cyc. at page 1165:

"The true requirement is that the causes of action in the two suits shall be the same. Undoubtedly the subject-matter involved in the two actions must be the same, for otherwise there could not possibly be an identity of the causes of action. But the same transaction or state of facts may give rise to distinct causes of action, and a judgment upon one will not bar a suit upon another. Therefore a judgment in a former suit, although between the same parties and relating to the same subject-matter, is not a bar to a subsequent action, when the cause of action is not the same."

If this is the rule where the parties of record are the same in both suits, at least as much must be required when it is sought to hold a judgment in a prior suit binding upon one not a party of record thereto. The *quo warranto* suit was not a suit to determine title as usually understood. The title of the corporation was merely incidental at most. The subject-matter of that suit so far as the issues were determined was the right of the corporation to own land in Missouri. The cause of action was the alleged wrongful holding by the corporation for more than six years of real estate not necessary to its legitimate business, in violation of our Constitution and laws. The object of the action was to oust the corporation from the State and to confiscate its property or levy a fine against it for said violation. The State claimed no title to the land and only claimed the lands were forfeitable to the State. As we understand the judgment in the *quo warranto* case it went no further than to hold the quitclaim deed from the corporation to Gilchrist and his declaration of trust fraudulent and void as against the State; that while the stockholders as individuals were the nominal beneficiaries under the declaration of trust, the corporation was the real beneficiary thereunder and that the transaction was therefore colorable only, as against the State; that in the sense denounced in the Constitution and laws of Missouri, the corporation was holding real estate even after the execution and de-

livery of the quitclaim deed and the declaration of trust; that judgment was in no sense an adjudication that, as between Gilchrist and the corporation (or its stockholders), the quitclaim deed and the declaration of trust were void and of no force and effect. The trial court found in the case at bar that "the *quo warranto* suit did not adjudicate the title as between the parties to this suit and it is not binding on the parties herein, and that such suit only decided that the Three States Lumber Company had violated the statutes relative to a foreign corporation holding real estate not necessary for business purposes."

The effect of the judgment in so far as the State was affected by the quitclaim deed and the declaration of trust, was to determine that the corporation, and not the stockholders, was the real beneficiary under the declaration of trust; that even if the said deed was valid as between Gilchrist and the corporation, it conveyed nothing more than the legal title to Gilchrist. The corporation subsequently conveyed whatever title it had to its stockholders on January 20, 1921. If it then had no title such deed conveyed nothing. Certainly that deed and the quitclaim deed to Gilchrist, taken together, effectively divested the corporation of any semblance of title to the lands and rendered it immune from further *quo warranto* suits.

We do not think the stockholders are now in a position to question that the quitclaim deed and declaration of trust were valid when executed. Those instruments put the legal title in Gilchrist, subject to the trust, and his right to administer the trust cannot be questioned by either the corporation or its stockholders, even though the State was not precluded thereby. It follows that the trial court properly held the trust to be a valid and subsisting trust as between the parties to it, notwithstanding the *quo warranto* proceeding.

III. The next question for determination is whether the trial court erred in terminating the trust after find-

ing the trust created by the declaration of trust was in full force and effect. We have concluded that it did so err. The rule is that a court of equity cannot ordinarily terminate an active trust capable of being carried out in the manner provided in the instrument of its creation or interfere with the trustee so long as he is acting in good faith and the purposes of the trust have not been accomplished. [Gibson v. Gibson, 280 Mo. 519; Easton v. Demuth, 179 Mo. App. 722; Shelton v. King, 229 U. S. l. c. 95.] We think the situation of the beneficiaries established by a deed is analogous to that of beneficiaries under a will who take land burdened with trust provisions imposed by testator. The courts will not interfere and terminate such trust, at least where there is any possibility of such trust being carried out. [Stevens v. De La Vaulx, 166 Mo. 20; Heady v. Crouse, 203 Mo. 100; McConnell v. Deal, 296 Mo. 275, 246 S. W. 594.]

*Termination of Trust.*

But respondents contend that the trial court properly terminated the trust because the trustee could no longer carry out the purposes of the trust on account of the judgment in the *quo warranto* suit and because of estrangement between him and the other beneficiaries.

Sufficient answer to the first contention is found in that part of the decree of the trial court, which we have approved, holding that the trustee as such was not concluded by the decision of the *quo warranto* suit. There existed no reason under the decree of the court in this case why the trustee could not thereafter sell the lands and give a good merchantable title thereto.

Nor do we think the relations between the trustee and the beneficiaries justified the termination of the trust. True, Gilchrist held the lands many years, while they were of much less value than at present, without making any apparent active effort to sell them. During those years the titles were being perfected, and drainage matters calculated to enhance their value manyfold were pending. If a majority of the beneficiaries in interest

were not satisfied for the trustee to continue his method of handling the trust lands, such majority could have terminated the trust at any time by requesting, in writing, that a sale be effected according to any arrangements they might have concluded. Naturally advantageous sale of the lands was difficult, if not impossible, after the institution of the *quo warranto* suit. After that case was determined adversely · to the corporation, a purchaser would naturally demand that, not only the trustee and the beneficiaries join in their conveyance, but also the corporation itself. The question of compensation to the trustee to a great extent prevented an agreement whereby all these interested parties could join in a conveyance satisfactory to a purchaser or could join in conveying to new trustees. However, we cannot hold that the trustee was guilty of misconduct in refusing to join in such a conveyance until reasonable compensation was secured or paid to him. We express no opinion concerning the reasonableness of the compensation heretofore demanded by Gilchrist. The trial court did not take the view that Gilchrist's salary as an officer of the corporation was intended as full compensation for his services as trustee, nor do we take such view. Since the question of the interest of the corporation in the lands has been eliminated by the subsequent conveyance by the corporation to its stockholders subject to the rights of the trustee, even if the quitclaim deed to Gilchrist was not entirely effective, no good reason now appears why the trustee cannot immediately proceed to sell the lands under the provisions of the declaration of trust and give a good merchantable title thereto or, in the event he fails or refuses to do so, no reason exists now why the beneficiaries themselves may not call upon him to convey the lands under that provision of the declaration of trust requiring the trustee to sell and convey the lands or any part thereof whenever thereto requested in writing by a majority in interest of said stockholders.

It follows, that the trial court erred in terminating the trust, in decreeing partition of the lands, in fixing the

compensation of the trustee and in declaring moneys advanced to the trustee by the corporation ''a first lien against the lands and the proceeds of the sale thereof in favor of the defendant Three States Lumber Company.'' The declaration of trust provided for advances to the trust estate and compensation to the trustee by authorizing the trustee after the sale to deduct ''all moneys paid out and expended by me, for and on account of said lands, and interest on the same, and a reasonable compensation to me for my services as trustee for said stockholders.''

It may be that the corporation, duly authorized thereto by its stockholders and directors, made a bad bargain with the trustee; but it did make the bargain. It had the right to make a bad bargain, if it did make it. Said agreement violated no law. All we can do is to decree the enforcement of the bargain as made. It will be time enough *after the sale of the lands or the termination of the trust,* if it hereafter becomes subject to termination for reasons not now existing, to settle accounts as between the corporation and the trust estate for moneys advanced and to determine the compensation to which the trustee is entitled, as between himself and the beneficiaries.

The judgment of the circuit court is therefore reversed and the cause remanded with directions to the circuit court to enter its judgment decreeing the trustee to be the owner of the legal title to the lands, subject only to the provisions of the declaration of trust of August 18, 1902, with other provisions of said judgment in harmony with the views herein expressed. All concur.