HOWARD E. HUSELTON, RESPONDENT, v. COMMERCE TRUST COMPANY, APPELLANT.—64 S. W. (2d) 757.

Kansas City Court of Appeals. September 11, 1933.

Henry S. Conrad, L. E. Burham and Hale Houts for respondent.

R. B. Caldwell, H. M. Noble, and McCune, Caldwell & Downing for appellant.

CAMPBELL, C.—Plaintiff, a real estate broker, brought this suit to recover commission for the sale of real estate in Kansas City, known as the Lowry tract. Upon trial he had a verdict in the sum of $3800 and interest thereon in the sum of $293.86. From the judgment rendered upon the verdict the defendant has appealed.

Defendant insists that the court erred in refusing to direct verdict in its favor. In determining the question, plaintiff is entitled to have the evidence in his favor taken as true and to have the benefit of every reasonable inference to be drawn therefrom. [Roan v. Wells, 14 S. W. 488; Hubbard v. Badalamenti, 6 S. W. (2d) 983.] And we may not assume that defendant's evidence was "true, satisfactory, or convincing to the body called upon to hear it, from the mere fact that no one by words contradicts what has been uttered." [Gannor v. La Clede Gas & Light Company, 46 S. W. 968, 972, 145 Mo. 502.]

On November 14, 1928, defendant authorized the plaintiff to find a purchaser for the Lowry tract at a price of $110,000. This right expired November 20, 1928. Upon obtaining the authority, plaintiff endeavored to sell the property to the Standard Oil Company. These efforts, with the knowledge and consent of the defendant, were continued for some months after November 20, 1928. On June 19, 1929, plaintiff, having acquired information that the Southwestern Bell Telephone Company contemplated purchase of ground upon which to erect a building, went to see Mr. Ulffers, general manager of the telephone company in Kansas City. On this occasion plaintiff talked with Mr. Ulffers for about one hour; described various properties, including the Irving Block and the Whittier Block, of which latter block the Lowry tract was a part; stated prices on some of the tracts and estimates of value upon others; advised that the establishment of a highway, known as the Volker Road, would affect the desirability of the Irving Block; disclosed the fact that upon the request of the Commerce Trust Company he had endeavored to sell the Lowry tract at a price of $110,000; and insisted that the Whittier Block was the most desirable site. Mr. Ulffers asked many questions, made request for map of the Whittier Block and did not by act or word indicate that he had knowledge or information that the Lowry tract was for sale or that he was considering purchasing the Whittier Block. Later, on the same day, plaintiff wrote Mr. Ulffers three letters, describing the properties which had been mentioned in their conversation and accompanied the letters with maps and plats. On the same day, plaintiff, orally and in writing, informed the defendant of his conversation with Mr. Ulffers. In July, the exact day was not shown, the telephone company eliminated from its consideration all properties except the Whittier Block and the Irving Block. In the latter part of that month Jones & Company obtained an option to purchase each tract in those two blocks except

the Lowry tract. About August 3rd, plaintiff was informed that Jones & Company was seeking to extend the options. Plaintiff testified that thereupon:

"I went over to see Mr. Ulffers and took with me a map of the downtown district extending, as I remember it, from Admiral to south Fifteenth, from Broadway east to Locust, along with photographs showing the proposed court house and city hall sites as originally proposed and also several pages from the Citizens Bond Committee Pamphlet issued in 1928, stating that those two sites, city hall and court house, giving the details regarding the bond proposals for those two sites. I also had with me a number of photographs of proposed Volker Road taken from buildings looking down and also a map showing in a general way the Oak Street Trafficway from the Missouri River south to Twenty-seventh Street and all its connections.

"Q. What were you talking about Volker Road, with reference to what were you talking about? . . . A. I told Mr. Ulffers that I hoped he would not be seriously interested in the block between Thirteenth and Fourteenth and Oak and Locust Streets because if big buildings were erected there it would forever cut out the opportunity for Volker Road as an east and west trafficway connecting everything we have north and south from the east city limits over to the west side; that there was no other street where they could cut through at the cost and provide a good trafficway on good grades.

"Q. Was anything said about the relation of that to this tract in question? A. Yes, sir, I called his attention that aside from serving the city as a great and necessary trafficway east and west its construction or opening would greatly enhance the value of the property south to Fifteenth Street because it would put this property not only on Oak Street but between two of the greatest trafficways we would ever have, Volker Road and widened Fifteenth Street.

"Q. What did he say, if anything? A. I stressed the future enhancement of value in that property.

"Q. What did Mr. Ulffers say? A. Mr. Ulffers said, he asked me if I really thought there was a prospect of Volker Road being included in the next bond budget program, then being talked about in a preliminary way, and he added the remark, 'I wouldn't want to interfere with any city project like that if there is any prospect of it being included.'

"Q. Well, did he make— A. (Interrupting) Then he asked me if I would send him a letter stating the facts as I have given them about Volker Road, the opportunity and its value, and he also asked if I would obtain for him from the city hall such information as I could as to the probability of the Volker Road trafficway being included in the next bond program. I went to the city hall and talked to Judge McElroy. . . .

"Q. Was it about Volker Road? A. It was.

154

"Q. That is enough on that. What else did you do? A. I reported back to Mr. Ulffers. . . .

"Q. What did Mr. Ulffers ask you to do? A. I had—

"Q. (Interrupting) No, when you were there at this time what did he ask you to do? A. He asked me to write him a letter about Volker Road stating the facts as I had given them to him with reference to Volker Road. He was not quite clear in his mind just what the project entailed. . . .

"Q. Did he ask you for anything else? A. He asked me to send him again, or send him rather, that map of the downtown district which I had used as an illustration in talking to him about the city hall and court house location and Volker Road and widening of Fifteenth Street."

On August 8th, plaintiff wrote a letter describing Volker Road and delivered it with maps and photograph to Mr. Ulffers.

Mr. McCaffrey, an employee in the trust department of the defendant, testified that Mr. Shutz called him on the telephone and asked if the Lowry tract had been sold and for a "sales figure or price;" that the witness replied, saying that he "thought our trust committee would be agreeable to accepting an offer of $125,000 cash;" that he did not know whether the conversation occurred before or after the time he learned that plaintiff had submitted the property to the telephone company.

"Q. What is your recollection about whether you did have a conversation with him (Shutz) to the effect that if he negotiated a sale of this property he would be paid the usual real estate commission? A. My best recollection is it was not announced in that conversation.

"Q. Was it in any conversation before you made a deal for the property or this escrow? A. Yes, sir, in subsequent conversation it was.

"Q. Now you say that you asked Mr. Shutz about who the buyer was in order to protect him on commission? A. That is right.

"Q. So that evidently you did have some conversation about a commission at that time? A. But nothing as to full commission or regular commission or anything.

"Q. But you did some time before this escrow agreement was finally made and deal closed tell him if the deal went through you would pay him the regular commission? A. Yes, sir. We really went further than that because there was a controversy about that and we took the stand that we were going to be liable for only one commission. . . .

"Q. Did you before the deal was finally closed, tell Mr. Shutz if he made this sale he would be paid the regular real estate commission? A. We made the statement we would pay the regular real estate board commission for the sale.

"Q. To whoever made it? A. Yes, sir."

Mr. Adams, one of the chief officers of the defendant, testified that plaintiff, on June 19, advised him of the fact that he had submitted the Lowry property to the telephone company; that about August 3 or 4, Mr. Shutz and Mr. Ulffers came into his office and asked him if the defendant would sell the north twenty-four and one-half feet of the property.

"Q. Tell what took place about that twenty-four and one-half feet? A. I told those gentlemen that we had consented to Mr. Huselton presenting this property to the Southwestern Bell Telephone Company on or about June 19th and that I was not in position to discuss this matter of this property unless it be understood that we would pay one commission for the sale of this property.

"Q. Now proceed. What took place in discussing the twenty-four and one-half feet? A. We were assured that we would be called upon to pay but one commission and the commission, if a controversy, would not be a matter in which we would have any part."

The witness also testified that the defendant was "not taking any part" in the law suit; that it was willing and ready to pay one commission; that following the conversation with Mr. Shutz and Mr. Ulffers he consulted with plaintiff as to whether or not it was advisable to consider a sale of the twenty-four and one-half feet; that plaintiff said that it "would be a mistake" to sell a part of the tract; that late in August or early in September, Mr. Ulffers called Mr. Kemper, president of the defendant, and discussed purchase of the property; that Mr. Kemper and the witness on behalf of the defendant gave Mr. Ulffers a price of $120,000 and, thereupon, an agreement to sell at that price was signed and placed in escrow.

In event the evidence considered in its most favorable light to plaintiff tends to show that plaintiff introduced the telephone company to the defendant, and that plaintiff was the cause of the negotiations which resulted in the sale, or if he was the procuring cause of the sale, the case was for the jury. [Bigham v. Linnville, 156 S. W. 713, 170 Mo. App. 354; Gilchrist v. Stark, 41 S. W. (2d) 888.]

The evidence when thus considered warranted the jury in finding that plaintiff was the first to inform Mr. Ulffers that the Whittier Block, including the Lowry tract, was for sale and thus was the procuring cause of the negotiations resulting in the sale. This, for the reason that on June 19 Mr. Ulffers permitted plaintiff to talk with him for an hour concerning a site for the telephone company's building, asked many questions, and requested plaintiff to furnish map of the Whittier Block. If, as defendant contends, Mr. Ulffers had full information on that subject, why did he not inform plaintiff of that fact, and why did he seek information from plaintiff, and why did he, some six weeks later and at a time when only two locations were under consideration, ask plaintiff to furnish written statment relating to Volker Road and to furnish map thereof? The trier of the

fact could very well find that Mr. Ulffers, a man of large affairs, would not have allowed plaintiff, with whom he was not acquainted, and extended interview, would not have questioned plaintiff as he did, would not have sought definite information concerning, Volker Road, an important element to be considered in deciding whether his company would select the Whittier Block or the Irving Block, unless he was in need of the information and would be influenced thereby. No other reasonable deduction can be drawn from the evidence save that Mr. Ulffers was merely trifling with plaintiff, an inference which, of course, the jury was not required to indulge. Manifestly, the court cannot judicially say that the information furnished by plaintiff, especially in respect to the Volker Road, was not the procuring and inducing cause of the selection of the Whittier Block.

The defendant further insists that the evidence of Mr. Shutz and three of the officers of the telephone company to the effect that some weeks before June 19 they had obtained prices upon the several tracts in the Whittier Block, prepared maps and plats thereof; that Mr. Shutz obtained options and conducted necessary proceedings to vacate the alleys in the block purchased, and that the efforts of plaintiff did not in any way influence the officers of the telephone company in making the purchase, was uncontradicted and, hence, the court, as a matter of law, should say the evidence was true. The question was one of fact for the jury and not one of law for the court. [Whittington v. Westport Hotel Operating Co., 33 S. W. (2d) 963, 967.] In passing upon an instruction in the nature of a demurrer to the evidence, the evidence of plaintiff must be accepted as true and the evidence of defendant rejected as untrue, unless such evidence tends to support plaintiff's case. [Morris v. Atlas Portland Cement Co., 19 S. W. (2d) 865, 872; Clark v. Atchison & Eastern Bridge Co., 324 Mo. 544, 561, 24 S. W. (2d) 143.]

But there are other reasons supporting the ruling of the trial court in refusing to direct verdict for the defendant. The pleaded defense was the general issue and that plaintiff was the broker of defendant with authority to submit the Lowry tract to the telephone company; that prior to plaintiff obtaining such right defendant "quoted a price upon such real estate" to Jones & Company "and understands and states the fact to be that said sale to" the telephone company "was consummated through their agency and efforts," by reasons of which Jones & Company have demanded the commission; that defendant is willing to pay the demand sued upon but "has a real doubt as to which of the claimants is entitled" thereto.

The evidence on the part of both the plaintiff and the defendant was that the named defendant was not "taking any part" in the law suit and that Jones & Company was defending the action. Hence, the allegations of the answer that plaintiff was the agent of defendant, had authority to submit the Lowry tract to the telephone com-

pany; that the commission had been earned, was due, and that defendant had "real doubt" as to which of the claimants, plaintiff or Jones & Company, was entitled to the commission were judicial admissions conclusive upon Jones & Company as well as the named defendant. The averment that plaintiff or the other claimant, Jones & Company, was entitled to the commission, which the debtor, the named defendant, was willing to pay, was in the nature of a tender and as a matter of law entitled plaintiff to recover in event Jones & Company was without right in the commission. That is to say, if Jones & Company was a stranger in right, it was none of its concern to whom the commission was paid. Jones & Company, a partnership, was the agent and representative of the purchaser and though it were conceded that the former was the procuring cause of the sale, it was not entitled to receive commission from the defendant unless the latter agreed to pay for the service. [Liscomb v. Maston, 125 S. W. 1177, 1178; 9 C. J. 586.]

There was evidence introduced in defendant's behalf warranting the jury in finding that the defendant did not promise to pay Jones & Company a commission until after the contract of sale was signed.

In the testimony of Mr. Shutz, member of the partnership who had entire charge of the transaction on behalf of his firm, is the following:

"Q. Now you didn't say anything to them about commission at all when you had that conference? A. With the Telephone Company?

"Q. No, with the Commerce Trust Company? A. My best recollection is that I did, Mr. Conrad. We would not be working for nothing—

"Q. (Interrupting) Don't give your reasons. A. Just a minute. I heard Mr. McCaffrey's testimony yesterday and he can't remember that and I don't like to say that he is wrong but according to my recollection I did.

"Q. Now let's see who is right. Take your deposition, pages 37-38: 'Q. Did you have any discussion with any representative of the Commerce Trust Company about a commission? A. Not at that time, no, sir.' Does that refresh your recollection? A. No. . . .

"Q. (Mr. Conrad, reading) 'Q. Not until after you signed up an option or contract? A. No, sir.' A. That was the discussion, yes, sir, that is true. We had no discussion or argument about commission at any time. Mr. McCaffrey told you that he intended to pay a commission and their price was based on that figure, Mr. Conrad.

"Q. When you were asked the question, 'Q. Did you have any discussion with any representative of the Commerce Trust Company about a commission?' did you think that had to do with some kind

of argument? A. All the discussion about commission came after this deal was made." ...

Mr. Conrad: I will read it and see if it is not clear and plain.

"Q. 'Q. Did you have any discussion with any representative of the Commerce Trust Company about commission? A. Not at that time, no, sir.' Did you make those answers? A. I believe I did. I don't recall the exact language as you use it there but you say I did. ...

"Q. (Mr. Conrad) You were later in this deposition asked about this same subject, were you not? A. I don't recall, Mr. Conrad.

"Q. I will read right on down: 'Q. When next did you have a conversation about this Lowry property with any representative of the Commerce Trust Company? A. When it came pretty close to the time of closing the sale, they said, they informed us that they had a demand from Mr. Huselton for a commission on the deal, and they informed us they agreed to leave the commission in escrow with them until that question could be settled.' Did you make that answer? A. I assume that I did.

"Q. 'Q. Did they ever agree to pay you a commission? A. Yes, sir. Q. The Commerce Trust Company agreed to pay you a commission? A. Yes, in the event the sale was negotiated. Q. Tell me when that offer was made and what was said. A. When I first got a price on the property I asked them if they would pay a commission out of that price.' Did you say that? A. That is where Mr. McCaffrey and I differ. I think that I did.

"Q. Why did you answer up here at the other places as you did? A. Because you said the 'discussion' of a commission, just like you put that other term in this other question, and it was very misleading to me and I tried to find out what you meant at the time these depositions were taken."

The jury could find that the witness and the defendant did not *discuss* the question of commission until after the transaction was closed, in which event there was no consideration for an agreement to pay commission to Jones & Company. The value of the explanation that the word "discussion" was misleading was for the jury.

Plaintiff's instruction Number 2, which the defendant claims was erroneous, told the jury that if the defendant employed the plaintiff as agent to sell the Lowry tract "and that in pursuance thereof the plaintiff discovered the Southwestern Bell Telephone Company was a possible purchaser of the property mentioned in evidence and disclosed its name as such to the defendant, and in good faith followed up the transaction to the time of its final consummation and was the procuring cause of said sale, then plaintiff is entitled to recover."

The instruction allowed plaintiff recover upon the jury finding that he discovered the purchaser, disclosed its name to the defendant,

*and was the procuring cause of the sale.* The defendant contends the instruction was misleading and prejudicial for the reason there was no evidence that plaintiff discovered the purchaser and that it was immaterial that plaintiff disclosed the name of the prospective purchaser to the defendant. Though it were conceded there was no evidence that plaintiff discovered the purchaser and also that it was immaterial that plaintiff disclosed to the defendant the name of the prospective purchaser, nevertheless, the instruction was not reversably erroneous for the reason that the alleged unproven and immaterial matters did not warrant a verdict for plaintiff unless the jury also found that plaintiff was the procuring cause of the sale. The defendant also contends that the instruction was erroneous for the reason that it was in conflict with its instruction J. Said instruction (J) told the jury that the fact that plaintiff disclosed to defendant the name of the prospective purchaser was immaterial. If plaintiff's instruction No. 2 was not in itself erroneous it could not be made so by either a proper or improper instruction obtained by the defendant.

The defendant assigns that the court erred in refusing to give its instruction E, which reads:

"The court instructs the jury that if you find and believe from the evidence that Southwestern Bell Telephone Company would not have purchased the Lowry tract through any agent unless such agent, as part of the transaction of selling said tract, presented to the said Telephone Company the opportunity to purchase on terms satisfactory to it, each and every other tract composing the tract which was purchased by said Telephone Company, as referred to in the evidence, then plaintiff cannot recover and your verdict must be for the defendant."

The claim of the defendant that it was entitled to this instruction is based upon the evidence of plaintiff, the sum of which was, that he understood from the conversation with Mr. Ulffers on June 19 that the telephone company would "have to have enough ground together in one piece for its building;" that he, plaintiff, did not have authority to sell some of the lots in the Whittier Block, did not get offer from the owners of such lots, and never attempted to present to the telephone company opportunity to purchase at one time each of the several tracts comprising the block.

As stated elsewhere in this opinion, Jones & Company, and not the named defendant, defended the action. In its defense, Jones & Company sought to defeat plaintiff upon the theory that it, and not the plaintiff, was the procuring cause of the sale; that it, and not plaintiff, was the procuring cause of the negotiations which resulted in the sale, therefore, final judgment in this action will adjudicate the right of plaintiff and the right of Jones & Company in the commission and in legal effect judicially determine that the named

defendant must pay the commission to one or the other of said claimants. [State ex rel. v. Homer, 155 S. W. 405, 410; Leahy v. Mercantile Trust Co., 247 S. W. 396, 404.] A final judgment in this action against plaintiff would be *res judicata* in an action by Jones & Company against the Commerce Trust Company to recover the commission. Upon trial of such an action, Jones & Company would be entitled to recover upon proving the judgment and issues presented by the record in this cause and evidence tending to show that defendant did not agree to pay Jones & Company a commission, or that the latter was not the procuring cause of the sale, would not be admissible for the reason that all such questions were foreclosed by the judgment in this cause. Hence, an instruction authorizing verdict for the Commerce Trust Company was improper unless every element entitling Jones & Company to the commission was included therein. The instruction (E) allowed a verdict for the defendant without requiring the jury to find that it agreed to pay Jones & Company a commission and without requiring a finding that Jones & Company was the procuring cause of the sale. Jones & Company was the agent of the purchaser and was not entitled to receive commission from the seller in the absence of an agreement that the latter would pay Jones & Company a commission.

The defendant insists that the instruction presents the theory of its defense and argues that a litigant is entitled to have his theory of the case submitted in his instructions. The rule invoked applies only in those instances in which the theory of the litigant finds support in the law. The instruction allowed a verdict for the defendant, the legal effect of which would be to determine that Jones & Company was entitled to the commission without requiring the jury to find facts necessary to entitle Jones & Company thereto. The court properly denied the instruction.

The defendant requested, and the court refused to give, its instruction H, as follows:

"The jury is instructed that if you find and believe from the evidence that Commerce Trust Company and Southwestern Bell Telephone Company understood that the commission or compensation of the agent procuring the sale of the Lowry tract referred to in the evidence, was to be paid by the seller, then it is wholly immaterial as to whether Herbert V. Jones & Company had or had not been requested by said Telephone Company to assemble the tract identified in evidence as having been purchased by said Telephone Company, or to perform any other service in connection therewith, and if you find and believe from the evidence that Herbert V. Jones & Company and not plaintiff was the primary, proximate and procuring cause of said sale, then plaintiff cannot recover and your verdict must be for defendant."

The instruction did not submit to the jury the question as to

whether or not the seller agreed to pay Jones & Company a commission and was, therefore, erroneous for the reasons stated in our discussion of instruction E. The relation of Jones & Company and the purchaser was such that the former, though it performed service of value to the seller, had no right to be paid therefor by the seller in the absence of an agreement creating the right. The understanding of the purchaser and seller relating to the commission would not in any way affect the right of plaintiff therein. It is not amiss to say again that plaintiff and Jones & Company are the actual parties to the controversy; that Jones & Company, agent of the purchaser, had no right in the subject-matter of the action in the absence of a contract of agency between it and the seller, and that a final judgment in this action adverse to plaintiff will, in legal effect, judicially determine that Jones & Company was entitled to the commission. It follows that an instruction which authorized a verdict for the defendant was erroneous unless every essential element necessary to entitle Jones & Company to the commission was included therein.

The refused instruction warranted a verdict for the defendant without requiring the jury to find facts entitling Jones & Company to receive the demand in suit. The court properly refused the instruction.

In the argument to the jury plaintiff's counsel stated that "if they (Jones & Company) don't get a commission out of the seller they are to get it out of the telephone company." The defendant objected to the statement upon the ground that there was no evidence upon which to base it. The court struck the statement and thereupon defendant's counsel moved the court to discharge the jury for the reason that the argument was improper, prejudicial, and not based on any evidence in the case, "misleading and inflames the jury and prevents the defendant from having a fair trial." The motion was denied.

At the trial Mr. Shutz testified that there was no arrangement by which he was to be paid a commission by the telephone company on account of the purchase of the Lowry tract; that his arrangement with the telephone company was that in assembling properties for it to purchase, the sellers, and not the purchaser, were to pay commission, and that the telephone company did not pay him commission for purchasing property for it; that Saylers and Riddlers, owners of part of the Whittier Block, refused to pay Jones & Company a commission; that a part of the consideration of the purchase of said tract was paid by transferring property of the telephone company, and that the latter paid Jones & Company a commission therefor, the amount of which was based upon the value of the property transferred by the telephone company.

In deposition Mr. Shutz testified that Saylers and Riddlers refused

to pay him a commission.; that he informed Mr. Ulffers of the fact, and, thereupon, Mr. Ulffers directed him to make the best deal he could with said sellers, and that "if we were unable to get a commission from them . . . they would take care of us." The argument was that a part of the evidence of Mr. Shutz, was not true and should not be believed by the jury. The law does not require counsel in argument to concede that the oral evidence of his adversary is true.

Further, the defendant obtained an instruction which told the jury that in determining the value of the evidence of any witness it was entitled to take into consideration the interest or lack of interest of the witness, the reasonableness or unreasonableness of the testimony of such witness, and that if it believed any witness had wilfully sworn falsely to any material fact, then it was at liberty to disregard all or any part of the testimony of such witness. Thus, the jury was told that it was within its proper province to value the evidence, to accept as true any part or all of the evidence of any witness, or to reject as untrue all or any part of the evidence of any witness. Having obtained the instruction, the defendant is not in position to say on appeal that an argument to the effect that the jury could reject as untrue all or any part of the evidence of any witness was improper. Moreover, it must be borne in mind that Jones & Company performed valuable services for its employer, the telephone company, and was, therefore, entitled as a matter of law to be paid therefor by its said employer, unless such right was waived or surrendered by the terms of employment. The jury was not bound to believe the evidence tending to show that Jones & Company waived or surrendered that right. Undoubtedly, it was proper for counsel in argument to contend that the jury ought not believe the evidence tending to show that Jones & Company had waived or surrendered such right.

The record is free of error prejudicial to the defendant. The judgment is affirmed. *Reynolds, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is affirmed. All the judges concur.

### ON MOTION FOR REHEARING.

CAMPBELL, C.—In motion for rehearing counsel say that this is a personal action between plaintiff and the Commerce Trust Company and governed by the rules applicable to an ordinary action of a broker to recover a commission for sale of real estate. This insistence ignores the fact that the Commerce Trust Company did not take part in the trial; that Jones & Company, through attorneys em-

ployed by it, took entire charge and control of the defense; that before the sale was made Mr. Shutz and Mr. Ulffers "assured" the Commerce Trust Company that "it would be called upon to pay but one commission;" that the answer, which was prepared or adopted by Jones & Company, alleges that the commission sued for was due and that the named defendant was willing to pay it. It may truly be said that the only issue tendered in the answer was whether the commission sued for should be paid to plaintiff or to Jones & Company.

The record discloses that plaintiff was entitled to recover the sum admitted to be due provided Jones & Company were without right therein, and by the same token the latter was entitled to the commission in event the former had no right in it.

Counsel say the holding in the main opinion that "a final judgment in this action adverse to plaintiff will, in legal effect, judicially determine that Jones & Company was entitled to the commission," is in conflict with the following authorities: State ex rel. v. Johnson, 123 Mo. 43; Handlan v. Wycoff and McMahon, 293 Mo. 682.

The cases cited hold that a person not made a party of record, who participates in a law suit or assists one of the litigants is not concluded by the judgment rendered in the action.

It may be that a person not made a party of record who participates in a law suit or assists one of the litigants is not thereby concluded by the judgment rendered therein.

But in the instant case Jones & Company did not merely participate in the trial or assist the Commerce Trust Company. Jones & Company assumed entire control of the defense and asserted that the "one commission" was its property. "The general rule seems to be that a person not made a party of record to the suit is nevertheless bound by any judgment rendered therein, if he has a direct interest in the subject-matter of the suit and has the right and opportunity to make defense or control the proceeding." [Owen v. Gilchrist, 304 Mo. 330, 356.]

The conduct of Jones & Company in respect to the litigation speaks for itself. Evidently it acted upon the belief that upon the rendition of judgment against plaintiff it would be entitled to receive the "one commission."

The answer pleads that the Commerce Trust Company has no interest in the result of the suit. Plaintiff and Jones & Company are the only real parties in interest. Hence the rule governing an ordinary action of a broker to recover a commission is not applicable to the facts in this case. The motion for rehearing is overruled.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The motion for rehearing is overruled. All concur.