Linda **COLLINS**, by her duly appointed guardian and curator, Ethel Collins, Plaintiff-Respondent,

v.

Earl **NELSON**, Defendant-Appellant.

No. 8290.

Springfield Court of Appeals.

Missouri.

Jan. 15, 1965.

Modified on Court's Own Motion; Rehearing or Transfer Denied Jan. 15, 1965.

Application to Transfer Denied March 8, 1965.

Claude T. Wood, Richland, George M. Lentz, Cohn & Lentz, Waynesville, for defendant-appellant.

Jean Paul Bradshaw, Warren S. Stafford, Neale, Newman, Bradshaw, Freeman & Neale, Springfield, for plaintiff-respondent.

HOGAN, Judge.

This is an action to recover damages for personal injuries sustained by the plaintiff while she was riding as a guest passenger in an automobile being driven by the defendant. The accident which gave rise to this action occurred shortly after 7:30 P.M., September 6, 1958, on Highway 133 near Crocker, Missouri, when the automobile in which the plaintiff and her companions were riding left the highway and struck a utility pole. A jury found for the plaintiff and assessed her damages at $10,000. The defendant has appealed.

Late in the afternoon on the day in question, the plaintiff, who was then a high school sophomore, 14 years old, met several of her schoolmates at a drug store in Crocker. In the group were the defendant Earl Nelson, Virgil McMurty and Shirley Starnes. Virgil's age is not shown and he did not testify at the trial, but Earl and Shirley appear to have been 16 (Earl testified that he was 21 at trial time), and all the members of the group appear to have been attending high school at Crocker. After

some discussion, the youngsters decided to attend a movie at Dixon, Missouri, a short distance northeast of Crocker.

With her parents' permission, Shirley had driven the family automobile "uptown," and she asked Earl, with whom she was then "going steady," to drive. About 7:00 or 7:30 P.M., the group left the parking lot at Crocker, with Earl and Shirley in the front seat and the plaintiff and Virgil in the rear. It was either dark or "getting dark" at the time.

The accident occurred after the group had traveled north on Highway 17 to its junction with Highway 133, and then some four miles east on 133 toward Dixon. At the point in question, Highway 133 is an east and west blacktop or bituminous highway, some 20 feet wide, and is straight with a slight downgrade to the east. The defendant testified that just before the accident happened he was proceeding east about 50 miles per hour, with his headlights on and his range of vision ahead clear for some one-half mile. There was no traffic, either approaching or following, and no obstruction to his view ahead. Earl stated that he had driven this particular automobile "two or three times" before, and that he knew how to steer and maneuver it. There is no suggestion that the automobile was mechanically defective, and both Shirley and Linda were of the opinion that Earl was driving carefully before the accident.

The parties sharply dispute whether the evidence shows the immediate and actual cause of the accident; however that may be, the record shows that the automobile left the roadway and went into the ditch on the left or north side of the road. As it came out of the ditch, the left front door came open and Earl fell from the car onto the highway. The automobile then traveled some 400 to 500 feet further to the east, struck a utility pole on the right or south side of the highway, and came to rest. As a result of this collision with the utility pole, the plaintiff sustained severe and disfiguring injuries. Other facts will be noted in the course of the opinion.

The first point for discussion is the defendant's contention that the plaintiff did not make out a submissible case. The plaintiff relied upon the res ipsa loquitur doctrine and submitted her case to the jury upon that theory. We do not understand the defendant to contend generally that the doctrine of res ipsa loquitur cannot be applied to casualties of this character and nature; all he says, if we have understood correctly, is that since the whole evidence permits an inference that the legal cause of the accident was something other than negligence of the defendant, the plaintiff was not entitled to submit her case under the doctrine of res ipsa loquitur.

In our view, the evidence concerning the actual and immediate cause of the accident is indefinite almost to the point of being obscure. The defendant testified that immediately before the automobile went in the ditch on the left or north side of the road, he was driving east at a speed well within the statutory limit. There was no other traffic on the highway, and his vision ahead was unobstructed for approximately one-half mile. He had driven this automobile two or three times before and understood, he said, how to steer and maneuver it. Being asked if he was experiencing any difficulty with the automobile, the defendant answered unequivocally, "No." No contention is presented that the automobile was mechanically defective.

From this point, the sequence of events becomes indistinct. The defendant lays great stress on the evidence indicating that shortly before the automobile left the road the windshield became blurred because it was dusty and a light shower, falling upon the dust, temporarily obscured the defendant's vision. His trial theory, which he sought unsuccessfully to submit, was that the accident happened because his vision had suddenly become so obscured, and the automobile left the road while he was attempting to locate the control for the wind-

shield wipers. The defendant's recollection of the incident was that " * * * it just started sprinkling there and had just messed up the windshield to where it was—it wasn't clear," and " * * * I'd asked about the windshield wipers and—and I don't know whether they were ever turned on or not, and the next thing I knew I was in the ditch." Earl also stated that " * * * I remember pulling it out of the ditch. And just as I came out of the ditch the door came open and I was in the middle of the highway. I'd fell out." Asked by counsel "how far back from" the accident it had started sprinkling, however, the defendant answered he was "not for sure," and he seems to have agreed that some interval elapsed between the time the shower began and the accident occurred. The defendant also stated, "I don't know," when he was asked if he had ever applied his brakes; and when he was questioned as to whether he remembered leaving the road and going into the ditch on the left side, he answered, "No." The defendant "couldn't say for sure" whether he had ever lifted his foot from the accelerator from the time he started down the slope on which the accident occurred until he fell out of the car.

The other witnesses' accounts of the accident, we may say, were no more definite. The plaintiff's recollection was that " * * I was talking to Virgil, and first thing I knew we went in the ditch on the left side of the road. And * * * we came back up on the road and went across the road and in the ditch on the right-hand side and hit an electric pole." Her description of the impact with the pole was that "I just flew up and hit the windshield and flew back to the back seat." Shirley's account of the accident was that " * * * we were just going down the road and he [Earl] asked—started raining a little bit. He asked me where the windshield wipers was, and I remember showing him, trying to tell him where they was at. And we went off in that ditch." Shirley didn't know how long an interval had elapsed between the shower and the time they went in the ditch; she

said that " * * * it [the automobile] come back out and he [Earl] wasn't in there, and that's all I remember."

■ We cannot agree with the defendant that no submissible case was made. It is too well established to be seriously disputed that loss of control or failure to control the movement of an automobile so that it leaves the highway and causes injury or damage ordinarily permits an inference of negligence on the part of the driver, Lindsey v. Williams, Mo., 260 S.W.2d 472, 474-475 [1], cert. den. Williams v. Lindsey, 347 U.S. 904, 74 S.Ct. 428, 98 L.Ed. 1063; Harke v. Haase, 335 Mo. 1104, 1108-1109, 75 S.W.2d 1001, 1002-1003 [1] [2,3]; Wells v. Asher, Mo.App., 286 S.W.2d 567, 568 [1]; and so long as the plaintiff's evidence does not itself clearly show the cause of the accident, or if the true cause is left in doubt, he is not deprived of the right to invoke the doctrine of res ipsa loquitur. Wells v. Asher, supra, 286 S.W.2d at 569–570 [2]. Broadly speaking, the *plaintiff's* evidence in this case tends to prove that while the defendant was in control of the automobile, driving along a straight and unobstructed highway at a moderate rate of speed, he not only lost control of the vehicle so that it left the highway, but fell completely out of the automobile. This is precisely the kind of fact situation to which the doctrine of res ipsa loquitur is ordinarily applied, Lindsey v. Williams, supra, 260 S.W.2d at 474-475 [1]; Tabler v. Perry, 337 Mo. 154, 165-167, 85 S.W.2d 471, 476–478 [10] [11, 12]; Vesper v. Ashton, 233 Mo.App. 204, 208, 118 S.W.2d 84, 87 [1, 2]; and, as the plaintiff carefully points out, making a prima facie case under the res ipsa loquitur doctrine creates a factual inference of negligence—not a mere presumption. The plaintiff's prima facie showing did not disappear, as would a presumption, simply because the defendant offered evidence in explanation of the casualty, Clark v. Linwood Hotel, 365 Mo. 982, 986, 291 S.W.2d 102, 105 [3]; Turner v. Missouri-Kansas-Texas R. Co., 346 Mo. 28, 37-38, 142 S.W.2d 455, 460 [9, 10], 129 A.L.R. 829,

and we therefore hold that the plaintiff made a submissible case under the res ipsa loquitur doctrine.

The defendant argues, with great conviction, that the trial court erred in refusing his Instruction D–B. This instruction, after hypothesizing that the defendant was driving the vehicle involved at the time and place in question, then continues:

> " * * * and was at all times referred to in the evidence exercising the highest degree of care in the operation of said automobile, and if you find and believe from the evidence that when said automobile being operated by the defendant reached a point on said highway approximately four miles East of Crocker, Missouri, *that it started to rain*, if you so find, *and that said rain fogged up the windshield on said automobile so that defendant could not clearly see the highway he was travelling on*, if you so find, *and* if you further find and believe from the evidence *that when the windshield became fogged up* that *the defendant in order to see, tried to turn on the windshield wipers of said automobile, and by reason of his being unfamiliar with the said automobile that he was driving*, if you so find, that *he could not locate said knob, lost control of his automobile*, if you so find, *and said automobile left the highway into a ditch* on the North side of said highway, then crossed the highway to the South side of said highway and was caused to collide with a utility pole, if you so find, and that the defendant did not drive said automobile into the ditch on the North side of said highway as a result of negligence on his part as submitted to you in Instruction No. —— then you are instructed that the plaintiff herein is not entitled to recover from the defendant Earl Nelson and as to plaintiff's cause of action your verdict will be in favor of the defendant Earl Nelson and against the Plaintiff." (Italics are ours.)

This instruction, the defendant says, is a converse to the plaintiff's verdict-directing instruction; and, inasmuch as the instruction is supported by the evidence, it should have been given, because a defendant has the right to an affirmative submission of his own theory of the facts shown in evidence, which, if found, would bar recovery by the plaintiff and exonerate the defendant. The plaintiff has answered this point rather elaborately, maintaining that Instruction D–B was properly refused because it does not in fact postulate a situation in which the defendant would be exculpated, and because it does not, as it is drawn, exclude all possible inferences of negligence on the defendant's part.

Actually, the defendant's point in connection with the instruction is only another facet of his broad general argument that he had a good defense to the action, which was in effect ignored by the trial court, though he proved and properly drew an instruction submitting that defense. Though we could agree as a general matter that a defendant is entitled to an affirmative submission of his own theory of the facts shown which would, if found, preclude recovery by the plaintiff and absolve the defendant, Anderson v. Welty, Mo.App., 334 S.W.2d 132, 139, and cases cited note 11, still this does not carry with it the right to submit an erroneous theory. Huselton v. Commerce Trust Co., 228 Mo.App. 150, 160, 64 S.W.2d 757, 763 [13]; 1 Raymond, Missouri Instructions, Section 39, page 44; 88 C.J.S. Trial § 301, page 818. We view the defendant's legal premise— that he had a good defense if the casualty resulted from his inability to operate the windshield wipers—as being basically faulty. The defendant's evidence was all to the effect that the automobile was under control at the time the shower began, but he was unable to say whether he ever slackened his speed or even whether he ever lifted his foot from the accelerator before he left the highway and went into the ditch. *It would appear further that if he was driving at a reasonable speed, as*

he testified, there was nothing to prevent him from stopping within a reasonable distance. If the defendant's vision were suddenly obscured, it then became his duty to take affirmative measures commensurate with the existing situation. Phillips v. Stockman, Mo.App., 351 S.W.2d 464, 471 [8]; Anno., 42 A.L.R.2d 13, 317–319, Section 155 (1955). We are aware that the instruction submits that the defendant was at all times in the exercise of the highest degree of care, and we agree that the degree of care required of him would not vary; however, the precise question to be decided was whether the defendant took such measures, in view of the conditions then obtaining, as comported with the highest degree of care. Peoples Drug Stores v. Windham, 178 Md. 172, 12 A.2d 532, 538–539 [12, 13]. Since the defendant elected to hypothesize the facts under his theory, he was required to formulate and submit all issues requisite to a finding in his favor; and we think, in this instance, he was required to negative the possible inference that the defendant caused the accident by failing to slow or stop the vehicle after his vision became obscured. Jones v. Terminal R. Ass'n of St. Louis, Mo., 242 S.W.2d 473, 478–479 [11–13]. All that the defendant did, according to his hypothesis (and indeed his general theory of defense), was to attempt unsuccessfully to locate the control for the windshield wipers. A verdict for the defendant upon this factual basis would exonerate him merely because he was incompetent. While we could agree that a driver is not required to possess the highest degree of skill, he is required to be a competent driver, and many cases from this and other jurisdictions make it plain that if a driver loses control of his vehicle because of his incompetence in operating it, he is liable for any resulting injuries.[1] We therefore consider that Instruction D–B did not, even if it were supported by the evidence, submit a matter of legal excuse, in the circumstances of this case, and was properly refused.

The defendant's final two points are that the trial court erred in refusing his request to advise the jury that the defendant's insurance carrier had a "policy defense," and that the court permitted improper argument on the part of plaintiff's counsel. We consider these two points together.

██ At the outset of the trial, counsel for the defendant advised the court, in chambers, and counsel for the plaintiff that " * * * [we] represent the M. F. A. Insurance Company and we are defending this case under a policy defense. We feel that there's no liability on the part of M. F. A." Defendant's counsel further explained his position by saying that " * * we feel that if the attorneys for the plaintiff, in their voir dire, should bring in the question of insurance, that we are also entitled to inform the panel that we do have this policy defense, and that was the purpose for asking for this hearing outside of the presence of the jury, that if insurance is injected into it, that we have a right and a privilege to—to show to what extent we feel that we have any liability, or that we do have no liability in this matter." Plaintiff's attorney then stated that he had intended to ask the jury only one question, en masse, " * * * if any of them were officers, stockholders or agents or representatives of the named insurance company. We intended to press the matter no further." The defendant's attorney then said: "We think you're permitted to do it all right, but we feel that under the peculiar circumstances of this case we're entitled to show what our relationship to this defendant is. We are not representing the defendant. We're representing the insurance com-

1. Hughey v. Lennox, 142 Ark. 593, 219 S.W. 323, 325 [5]; Dallas v. De Yoe, 53 Cal.App. 452, 200 P. 361, 363 [4] [5, 6]; Borgstede v. Waldbauer, 337 Mo. 1205, 1212, 88 S.W.2d 373, 375–376; Jackson v. Southwestern Bell Telephone Co., 281 Mo. 358, 371–372, 219 S.W. 655, 658–659 [2–4]; 42 C.J., Motor Vehicles, § 602, pp. 897–898; 60 C.J.S. Motor Vehicles § 265.

pany under a policy defense." The trial court stated that " * * * that request on your behalf will be overruled." Such record as we have concerning the voir dire shows that the following question was propounded to the veniremen:

" * * * Have any of you, or any members of your immediate family, every been, or any of you or any members of your immediate family at the present time associated with the M. F. A. Mutual Insurance Company, as an officer, director, agent or stockholder? If you have, just hold up your hands. * * * "

The record is otherwise silent as to the course of the voir dire. It does not show what examination, if any, was undertaken by defendant's counsel, nor does it show what in fact the "policy defense" was. The appellant asks us to rule very broadly, as we understand his position, that since the plaintiff propounded a question concerning the panel's connection with the insurance carrier, he was entitled to propound his theories of law concerning coverage to the jury. The difficulty with the appellant's position here is that, upon the record before us, the interest of the insurance carrier was unquestionable, and we think we cannot assume that the question of insurance coverage was prejudicially "injected into the case" simply because plaintiff's counsel asked one general question concerning the connection of the veniremen with the M. F. A. Insurance Company. Swinger v. Bell, Mo., 373 S.W.2d 30, 31–32 [1, 2]; Bunch v. Crader, Mo.App., 369 S.W.2d 768, 770–771 [1] [2, 3]. The defendant does not claim, nor undertake to show, prejudice on the part of any individual juror, as was shown or claimed in such cases as Beard v. Railway Express Agency, Inc., Mo., 323 S.W.2d 732, 737–738; Cleghorn v. Terminal Railroad Ass'n of St. Louis, Mo., 289 S.W.2d 13, 22–24; and Moore v. Middlewest Freightways, Mo., 266 S.W.2d 578, 584–586. Not only does the appellant have the burden of establishing error upon appeal, but he is required to present all of the "record, recitals, proceedings and evidence necessary to the determination of all questions to be presented to the appellate court for decision," Rule 82.14(a), V.A.M.R.; and upon the skimpy facts presented, we simply cannot fairly rule the contention made by the defendant. The most we can say is that the defendant has not established reversible error. Taylor v. Silver King Oil & Gas Co., Mo.App., 203 S.W.2d 147, 156–157[12–13].

The defendant also says that he was prejudiced by the final argument of plaintiff's counsel. His position is that certain of counsel's remarks constituted an improper and prejudicial argument that the real defendant was an insurance carrier.

The transcript shows that one of the attorneys for the defendant began the final summation in the following vein:

" * * * Earl Nelson was only sixteen, and the other two people in the car were about the same age. * * * A bunch of young kids going to the high school in Crocker, trying to find something to do on Saturday evening, and they start to Dixon and they get into an accident and several of them get hurt, including the plaintiff. And this big law firm from Springfield, Missouri, would like to have you go out and say that because of this situation *we've got to saddle this boy with a big judgment.*"

The argument continued:

" * * * And now, *are we going to saddle this boy with a big judgment,* or any kind of judgment because the Good Lord saw a chance or wanted to give us a rain when it was dry? That's what they're trying to say to us."

Later, another of defendant's attorneys, continuing the summation, argued:

" * * * But he's [Earl is] inherently honest, *and even to save a judgment, to protect himself from having a big judgment entered against him,* he's

not going to come in here and tell you folks something unless he knows it's a fact. * * *"

Counsel continued, still later:

"* * * *So even to save a judgment to be entered against him for fifteen thousand,* when they ask him: 'Do you know just where you were or how far you traveled after it started raining?' [He says] 'Nope, I don't.' He's honest about it."

Still later:

"* * * [A]nd I don't think you'll find him negligent. And if you don't, *think what it's going to mean to this boy if you saddle him with a fifteen thousand dollar judgment.*"

Counsel for the plaintiff, at this point, objected to the tenor of the argument about "saddling this boy with a judgment," on the ground that such an argument was improper. His objection was overruled. So, in his summation, he dealt with the matter thus:

"* * * You're not concerned about 'saddling,' as they put it, a judgment on somebody; you're concerned with what is said in these instructions. * * * Don't you be worried about who you're saddling a judgment on. *You follow the instructions of the court.*"

■ The impropriety of suggesting, by one means or another, that the real defendant is an insurance carrier has been fully

developed elsewhere by this court, and we shall not examine the subject again in detail. Hildreth v. Key, Mo.App., 341 S.W.2d 601, 615–617 [31] [32, 33]. See Anno., 4 A.L.R.2d 761, 787–792 (1949). However, it is just as improper to appeal to the jury's sympathy because of the litigant's poverty or lack of insurance coverage. Conrad v. Twin Oaks, Inc., Mo.App., 344 S.W.2d 286, 288 [1] [3].[2] Either kind of argument may result in prejudicial error. Conrad v. Twin Oaks, Inc., supra, 344 S.W.2d at 288 [2]; Annos., supra, 4 A.L.R.2d at 787; 32 A.L.R. 2d at 17–18, 33.[3]

In this case, we consider defendant's point to be overstated. When the final arguments are considered as a whole (and in context) we find ourselves unable to say that plaintiff's counsel made any deliberate attempt to persuade the jury to return a larger verdict than it might otherwise return simply because there was insurance coverage, as was the case in Buehler v. Festus Mercantile Co., 343 Mo. 139, 154, 119 S.W.2d 961, 967; nor, for that matter, can we confidently say, upon the record before us, that the jury's consideration of insurance coverage was in fact provoked or stimulated either by the remarks of plaintiff's counsel or defendant's counsel.

It is difficult to escape the conclusion here, however the arguments may have been interpreted by the jury, that the argument complained of was retaliatory in its nature. Several times during the course of defendant's summation, it was argued that the jury should "think what it's going to mean to this boy if you saddle him with a judg-

2. See also Tomson v. Kischassey, 144 Cal. App.2d 363, 301 P.2d 55, 59–60 [7]; Panelle v. Chicago Transit Authority, 47 Ill.App.2d 119, 197 N.E.2d 501, 502 [2]; Eastern Contractors, Inc. v. State, 225 Md. 112, 169 A.2d 430, 436 [3]; Duplessis v. Guyon, 80 N.H. 317, 116 A. 342, 343; Bean v. Best, 77 S.D. 433, 93 N.W.2d 403, 409–410 [11, 12] [13, 14] (argument that jury stood between client and financial disaster); Herstein v. Kemker, 19 Tenn.App. 681, 94 S.W. 2d 76, 94 [23, 24] (argument that verdict against defendant would ruin him for

life). Generally, see Anno., 32 A.L.R.2d 9, 33–34 (1953).

3. There are, of course, instances in which evidence of insurance coverage or lack of it is material and admissible. See, e. g., Whitman v. Carver, 337 Mo. 1247, 1252–1254, 88 S.W.2d 885, 888 [1, 2]; Turner v. Caldwell, Mo.App., 349 S.W. 2d 493, 498–499; Paepke v. Stadelman, 222 Mo.App. 346, 351–352, 300 S.W. 845, 848 [5] [6]; Anno., supra, 4 A.L.R. 2d at 775–786.

ment," or words of similar import, which could quite possibly be understood as meaning that the return of any substantial verdict against the defendant would impose an insufferable hardship on a young man of his station and means. The plaintiff simply countered with the argument that it was of no concern to the jury who was "saddled" with the judgment, and it appears to us that plaintiff's counsel was simply giving as good as he got, so to speak. Otherwise put, the defendant's remarks justified plaintiff's reply, and the defendant may not now complain. See Nelson v. O'Leary, Mo., 291 S.W.2d 142, 150 [18]; Douglas v. Twenter, 364 Mo. 71, 84–87, 259 S.W.2d 353, 361–363 [14–18].

The judgment is therefore affirmed.

RUARK, P. J., and STONE, J., concur.